## Lena Schmidt, Adm'x, v. City of Chicago.

1. STREETS—*City Having Electric Lights in Street Must Use Care to Protect Passers-by.*—The city is responsible for the presence of electric lights in the streets and is bound to use care commensurate with its dangerous character to protect people passing on the street.

2.  NEGLIGENCE—*When a Question for the Jury.*—Where reasonable and fair-minded persons might well differ as to whether or not certain conduct constitutes negligence, the question should be submitted to a jury.

3.  ELECTRICITY—*Those Employing Should Use Care Commensurate with the Danger.*—Any one using so dangerous an agent as electricity should exercise care commensurate with the danger.

Trespass on the Case.—Death from negligent act.  Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge presiding.  Heard in this court at the March term, 1902.  Reversed and remanded.  Opinion filed February 26, 1903.

DARROW & THOMPSON, attorneys for appellant.

JOHN E. OWENS, City Attorney, and WILLIAM ROTHMANN, attorneys for appellee; GEORGE F. MULLIGAN, of counsel.

MR. JUSTICE WINDES delivered the opinion of the court.

Louis Schmidt, a minor fifteen years of age, on October 11, 1897, received an electric shock from an arc light underneath a viaduct of the Rock Island Railroad Company's right-of-way across Forty-fourth street in Chicago, which caused his death.  His administratrix brought this action to recover damages for the benefit of his next of kin against the city of Chicago, a trial of which, at the close of the plaintiff's evidence, resulted in a verdict, directed by the court on motion of the defendant, finding it not guilty, and judgment thereon, from which this appeal is taken.

The declaration alleges that the defendant carelessly and negligently permitted said arc light to be placed and remain so close to the sidewalk on Forty-fourth street as to be in a dangerous and unsafe position; also that the defendant negligently and carelessly permitted said " light, operated by a strong current of electricity and commonly known as an arc light, which for a month preceding had been in dangerous proximity to the public traveling along said street, to exist and remain during the aforesaid time without any insulation or other guard or protection, by means whereof the said Louis Schmidt, fifteen years of age, while in the exercise of ordinary care and diligence, and while lawfully upon the street as a traveler, came in

contact with said arc light, whereby he received a shock, by means whereof he was killed," etc.

The evidence, while not very clear, tends to show, in substance, that the light in question was suspended from the lower part of the Rock Island Railway viaduct across Forty-fourth street, at about four and a half or five feet above and just outside the sidewalk of the street, one of the witnesses placing it three feet and two inches on the outside of the railing, which was about four inches from the edge of the sidewalk, and another witness about thirteen or fourteen inches from a perpendicular line through the railing. In appellee's brief it is stated that the light was about thirteen or fourteen inches from the sidewalk railing. The railing was made of two iron pipes about three or four feet high to the top one, and the bottom one about eighteen inches above the sidewalk. What the strength of the electric current which supplied the lamp was, does not appear, but the evidence tends to show a shock therefrom killed plaintiff's intestate instantly. There was no netting or other protection around the light, and the evidence shows that its insulation was defective, and had been in that condition for from a week to ten days previous to the date of the accident.

Just before the accident, deceased, with his little brother, then about nine years of age, was walking along the sidewalk near the light; they were holding each other's hands, and as they approached the light, which hung outside the rail, not very far, it was "sizzing," as deceased's brother testifies, and that deceased was looking at the light. This witness says that he saw what he thought was a marble on the sidewalk and stooped down to pick it up, and as he did so he heard deceased "holler ouch," and that the light went out; that he leaned down to listen and asked deceased what was the matter and he gave no answer; that he did not hear any more words from him, and he was dead. There is evidence that deceased was, before he received the shock, standing or sitting on the railing and reaching over to the light, but deceased's little brother, who

Schmidt v. City of Chicago.

was nearer to him than any one else, says deceased was not standing on the railing reaching over—that he did not touch the wire. Another witness, Parker, testified that he saw deceased fall—saw him falling, and that his feet were on the sidewalk, toward the light. This witness also says that a boy standing by the railing, a boy of the size of witness, could swing his arm over and touch the light. Deceased's mother testified that she examined him after his death, and he had a mark like a figure seven on the back of his left hand, about the wrist, which was dark, kind of black, and she tried to rub it away with her handkerchief, but could not. Dr. Abel, who examined deceased the same evening and a short time after his death, says that he found a mark on the left wrist which looked like a figure seven; that he didn't know of any other mark on his body, and that it "looked to me as though he died of an electric shock." It also appears that other boys had, a short time prior to the accident, on different evenings, received shocks from touching this lamp, and that it was not possible for the lamp to cause a shock if it was properly insulated.

It is claimed for appellee that deceased did not exercise ordinary care for his own safety; that he came in contact with the lamp because he climbed up on the railing and either reached out his hand toward the lamp and took hold of it, or by accident and unintentionally touched it. It is true the evidence tends to support each of these theories, but it also tends to show that he did not climb upon the railing, and that it was easy enough for his hand to have come in contact with the lamp without his having climbed upon the railing. That he did not reach out and take hold of the lamp, is supported by the testimony that there was a mark on the back of his hand, there being no other mark on his body. The boy being fifteen years of age and in his fourth year in high school, must have known there was danger of shock from touching the lamp, and there being no eye witness as to just how he received the shock, it was, as we think, considering the whole evidence, as well as the natural instinct of self-preservation, a question on which

reasonable and fair-minded persons might well differ, as to whether or not deceased came to his death by reason of a failure on his part to exercise ordinary care, and the case, as to this point, should have been submitted to the jury. Dallemand v. Saalfeldt, 73 Ill. App. 151–8, and cases cited; affirmed, 175 Ill. 310–15; Chicago & E. I. R. R. Co. v. Knapp, 176 Ill. 127–9.

That appellant was negligent in permitting this lamp to be four and one-half or five feet above the sidewalk of a public street, and fourteen inches outside a railing of two iron pipes three or four feet high, without any protection in way of netting or other covering, and improperly insulated, seems to us clear. Any one using so dangerous an agent as electricity should exercise care commensurate with the danger. Alton Ry. & Illtg. Co. v. Foulds, 190 Ill. 367–72.

It was gross negligence to permit this lamp to be within reach of passers-by on the sidewalk, improperly insulated and without any protection, as the evidence tends to show was the fact in this case. Whether or not this negligence was the proximate cause of the death of plaintiff's intestate, was a question which we think should have been submitted to the jury. The evidence tends to show the affirmative on this question, and no contention to the contrary is made by appellee.

It is said there is no claim that the city owned or operated this light, or that it was the duty of the city to inspect the insulation of arc lights used in the city. We think, however, the light being shown to be upon a public street of the city, the city is responsible for its presence there, and was bound to use care commensurate with its dangerous character to protect people passing on the street. City of Chicago v. Johnson, 53 Ill. 94; Culbertson, etc., Co. v. City of Chicago, 111 Ill. 651–8; Village of Jefferson v. Chapman, 127 Ill. 446.

A motion of appellee, at the close of the evidence, to strike out all testimony as to whether the lamp was defective, or a good or bad lamp, on the ground that there

was no allegation in the declaration in that regard, was sustained. If by this ruling it was intended to strike out evidence as to the insulation of the lamp, it was error, as the declaration alleges the lamp was without insulation.

In case of another trial the evidence should be made more definite as to the location of the lamp with reference to the sidewalk railing, as well as to the cause of death.

For the error in taking the case from the jury, the judgment is reversed and the cause remanded.