## Adeline A. Lau, Defendant in Error, v. City of Chicago, Plaintiff in Error.

## Gen. No. 14,866.

   1. NEGLIGENCE—*when concrete sidewalk not reasonably safe. Held,* that the undry concrete sidewalk at the time and place in question in this case was not reasonably safe for public travel.

   2. CONTRIBUTORY NEGLIGENCE—*when person using undry concrete sidewalk not guilty of. Held,* that it was not negligence as a matter of law for a person to walk over an undry concrete sidewalk which was unbarricaded.

   3. SIDEWALKS—*when notice of unsafe condition not essential to fasten liability.* If a city has authorized the construction of a sidewalk and it is permitted to remain in an unbarricaded and unsafe condition for the period of two hours in which time an injury results, a recovery against such city, irrespective of such city's having notice of such unbarricaded and unsafe condition, will be sustained.

   Action in case for personal injuries. Error to the Municipal

Court of Chicago; the Hon. McKenzie Cleland, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed February 15, 1910.

**Statement by the Court.** This is a writ of error prosecuted by the city to reverse a judgment in favor of the plaintiff. There was a trial by jury. The judgment is for a personal injury sustained in falling through a cement or concrete sidewalk in course of construction. The sidewalk was so nearly completed that it lacked merely the finishing coat or layer of fine sand or granite dust which gives the walk a smooth surface. The concrete was not yet thoroughly dry; it was in the condition which might be termed "green."

On May 9, 1907, the city issued a permit whereby it granted permission to John Zacsh to build a cement sidewalk in the front of the premises No. 33 Elston avenue. The work of building the sidewalk was being prosecuted May 14, 1907, not by the city but pursuant to its permission. Along in the afternoon of that day, between four and five o'clock, plaintiff came along and as she and other persons stepped upon the sidewalk it caved in. At and about the sidewalk there was construction material, such as piles of sand, boards and crushed stone. There is testimony, uncontradicted, that both the south and north ends—the street runs north and south—as well as the curb side, of the walk being built were barred by boards at 3 o'clock preceding the occurrence in question. It appears, however, that the boards barring passage had been removed to permit the bringing of the surface material onto the sidewalk by wheelbarrows. The defendant produced witnesses who testified that one of the workmen, holding a board in his hands with which he apparently was about to bar passage over the sidewalk, called out as plaintiff and others came along, with a view to warning them. Witnesses called on behalf of plaintiff denied that any such thing occurred. Some trouble in connection with the trolley wire had stopped

street cars north of the place in question and plaintiff, with others, had come off a car and were going south on Elston avenue to take a Milwaukee avenue car south of the place in question. The level of the sidewalk was seven feet above the surface of the ground. The concrete was laid between iron girders which ran across the sidewalk and supported the concrete. Light boards were placed underneath and held the concrete in place until it dried and acquired the proper strength. As plaintiff and two men came along and stepped upon the south section of the concrete work in the sidewalk in question, it gave way and went down to the ground beneath, carrying the three persons with it. There is no dispute either as to plaintiff having suffered injury or as to the extent of it.

EDWARD J. BRUNDAGE and JOHN R. CAVERLY, for plaintiff in error; EDWARD C. FITCH and AARON R. EPPSTEIN, of counsel.

HARVEY E. WYNEKOOP and MORSE IVES, for defendant in error; SYMMES & KIRKLAND, of counsel.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

The undry concrete sidewalk at the time and place in question was certainly not reasonably safe for public travel. The jury were clearly justified in finding and returning a verdict, in effect, that permitting persons to use the sidewalk, at the time and place in question, for public travel, was a lack of exercise of ordinary care on the part of whoever was charged with the duty to then and there exercise such care in order to prevent injury to persons rightfully using the sidewalk.

We regard the city of Chicago as liable, and, in view of the grounds and principles upon which we hold the city to be liable, it is of no consequence that there was such a short period of time—less than two hours —before plaintiff was injured, during which the un-

safe sidewalk remained in the unbarricaded condition. There is no place here for the application of the doctrine of constructive notice. The city authorized and knew of the work which was going on in connection with the sidewalk at the time and place in question and, because of such authorization and in view of the city's obligation to the public relative to streets and sidewalks, the law places upon the city the responsibility for the condition of the sidewalk which existed at the time when the plaintiff was injured. The question is one of obligation, regardless of notice; there was no occasion for the plaintiff to establish constructive notice.

It is a general rule of law that one under the duty and obligation to use ordinary care in a particular connection must use such care as will be commensurate with the requirements of the conditions and circumstances and with the character of the risks and dangers reasonably to be apprehended and guarded against. Where risk or danger of injury to any one is not to be anticipated, a less degree of care is sufficient to be regarded as ordinary care than where some particular risk or danger is to be anticipated. When the city, charged with the care and control of the streets and sidewalks, on May 9, 1907, authorized the building of this concrete sidewalk in front of 33 Elston avenue, the city authorized the creation of a condition of special risk and danger at the time and place in question, to such of the public as might rightfully have occasion to then use that sidewalk. The authorization of the creation of the special risk and danger was followed by a duty to exert such correspondingly greater activity, in the exercise of care in the protection of the public concerned, as would protect those in the exercise of ordinary care from injury by reason of the increased danger.

"One who authorizes a work which is necessarily dangerous, and the natural consequence of which is an injury to the person or property of another, is

justly to be regarded as the author of the resulting injury." Village of Jefferson v. Chapman, 127 Ill. 438, 444, approved in Economic Fuel Gas Co. v. Myers, 168 Ill. 139, 146. This rule is applicable with double force where, as here, a city primarily chargeable with a duty imposed by law, in respect to keeping streets and sidewalks safe for public travel, authorizes the doing of work in connection with those streets and sidewalks which is accompanied with attendant special risk or danger.

In Schmidt v. Chicago, 107 Ill. App. 64, 68, it was contended that a death resulted from the city's negligence in permitting an improperly insulated arc light lamp to hang too low down, close to the sidewalk. The city argued that there was no claim either that the city owned or operated the light or that it was the city's duty to inspect the insulation of the arc lights used in the city. To this argument the court replied: "We think, however, the light being shown to be upon a public street of the city, the city is responsible for its presence there, and was bound to use care commensurate with its dangerous character to protect people passing on the streets."

Had the city itself been building the sidewalk here in question, it would have been in duty bound to take the requisite precautions to prevent the injury which occurred, and, had it failed, it would have been compelled to respond in damages. The duty to exercise ordinary care to maintain the streets and sidewalks in a reasonably safe condition for public travel rests primarily, as respects the public, upon the city, and this obligation, primarily to discharge this duty, cannot be evaded, suspended or cast upon others by anything the city may do. Village of Jefferson v. Chapman, 127 Ill. 438, 445; Hogan v. Chicago, 168 Ill. 551, 559. The city being under the primary obligation, imposed by law, to exercise ordinary care to keep the streets and sidewalks of the city in a reasonably safe condition, where an injury has occurred, which is at-

tributable to the fact that a street or sidewalk was not in a reasonably safe condition, the city presents no defense by showing that the injury occurred on account of negligence in connection with work being done upon a street or sidewalk by an independent contractor or by reason of some condition created in a street or sidewalk by an independent contractor. Such is the doctrine of the cases above cited. The city is liable in such case, although it may have contracted away control and supervision of the work being done and may have no immediate control over the workmen. Village of Jefferson v. Chapman, *ib.;* Hogan v. Chicago, *ib.* Where the city authorizes and permits work upon or interference with a street or sidewalk by an abutting owner, its duty, obligation and liability are no less than when such work and interference are by an independent contractor. There is no reason for making a distinction. An owner of private land may at will surrender possession and control of his land and thereby relieve himself of responsibility for what may occur thereupon as the result of negligence of the party in possession; but municipal corporations are charged with such obligations and responsibilities in connection with their streets and sidewalks and public places that they may not by surrender of possession and control likewise at will relieve themselves from responsibility.

On the question of the warning of the plaintiff by one of the workmen the jury found against defendant. There is no such preponderance of evidence showing that the warning reached plaintiff as to justify us in holding that the jury was wrong.

The jury also found against defendant on its contention that the surrounding appearances and conditions were such as to warn plaintiff of the danger whereby she suffered injury. We cannot say that plaintiff, her situation in life being considered, understood or realized, or that an ordinarily prudent person, under the circumstances, should have understood

that there was any danger of the sidewalk caving in. To her it may have appeared perfectly safe to walk upon. We think the jury was justified in finding her not guilty of contributory negligence.

When a municipal corporation does work, or causes work to be done by an independent contractor, or authorizes work by an abutting owner or by some one else in a street or sidewalk under its control, it is bound to know continuously what is being done, the character of the work and the conditions as they change and exist from time to time; in short, whether there is any danger which may cause injury to the public.

We see no reason for disturbing the judgment.

*Affirmed.*