EDWIN E. SHERWIN, Appellee, *vs.* THE CITY OF AURORA, Appellant.

*Opinion filed February 20, 1913.*

1. PRACTICE—*what question is presented by the defendant's motion for a peremptory instruction.* A motion made by the defendant in a personal injury case for a peremptory instruction in its favor presents the question whether there is any evidence in the record which, together with the inferences reasonably to be drawn therefrom, is sufficient to support a verdict for the plaintiff, and in passing upon such question the Supreme Court is bound to assume that the evidence favorable to the plaintiff is true.

2. MUNICIPAL CORPORATIONS—*rule where owner of building has areaway under sidewalk.* Whether the fee of a street is in the city or the owner of abutting property, it is the duty of the city, where the owner constructs an areaway under the sidewalk, to specify the kind of structure to be erected for supporting the surface of the sidewalk and to require its specifications to be carried out.

3. SAME—*action lies against a municipal corporation for damages from its neglect to perform a legal duty.* An action will lie against a municipal corporation for damages growing out of its neglect to perform a legal duty, such as its duty to use reasonable care to keep its sidewalks in a reasonably safe condition for the use of the traveling public, provided the person injured was exercising due care for his safety.

4. SAME—*a city is bound to make reasonable inspection of the structure supporting sidewalk.* A city is bound to take notice of the method of constructing the supports for carrying a sidewalk over an areaway, consisting of an extension, under the sidewalk, of the basement of an adjoining building, and to make sufficiently frequent examinations to ascertain whether the structure has so deteriorated, through climatic or other natural influences, as to endanger the safety of the public using the sidewalk, there being nothing to prevent such inspection.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding.

CHARLES F. CLYNE, City Attorney, and BENJ. P. ALSCHULER, (R. C. PUTNAM, and J. C. JAMES, of counsel,) for appellant.

JOHN M. RAYMOND, and JOHN K. NEWHALL, (R. S. EGAN, of counsel,) for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

From a judgment of $2500 rendered against it in an action of trespass on the case brought in the circuit court of Kane county by Edwin E. Sherwin to recover damages for personal injuries sustained by him, appellant, the city of Aurora, prosecuted an appeal to the Appellate Court for the Second District. The Appellate Court affirmed the judgment of the circuit court and granted a certificate of importance, and appellant has prosecuted a further appeal to this court.

The sole ground relied upon for reversal is, that the circuit court erred in refusing the peremptory instruction offered by appellant at the close of the plaintiff's case and renewed at the close of all the evidence in the case. This assignment of error presents the question whether there is in this record any evidence which, together with the inferences reasonably to be drawn therefrom, is sufficient to support a verdict for the plaintiff, (*Elgin, Joliet and Eastern Railway Co.* v. *Hoadley,* 220 Ill. 462,) and in passing on this question we are bound to assume that the evidence favorable to the plaintiff is true. *Savage* v. *Chicago and Joliet Railway Co.* 238 Ill. 392.

The evidence shows that on August 18, 1910, while appellee was walking upon a public sidewalk in the business district of the city of Aurora, a portion of the sidewalk (referred to by the witnesses and counsel as an areaway) upon which he stepped gave way, causing appellee to fall into the opening or basement below, a distance of about nine feet, and as a result thereof he was seriously and permanently injured. The accident occurred in front of a store building owned by John Plain and occupied by Herman Felsenheld as tenant. This store building is twenty feet in width. The sidewalk in front of the store building is twelve feet wide, the outside eight feet being of concrete and stone. The inner four feet, being that portion of the sidewalk adjoining the store building and extending along the entire front thereof, was the portion known as the areaway, and the earth beneath it was excavated to a depth of about nine feet. Its purpose was to furnish light to the basement of the store building. It consisted of sections about four feet square. Each section consisted of an iron frame with numerous holes, in which were set bull's-eyes which were held in place by cement, and weighed about 250 pounds. These sections were supported by iron beams, which rested on stone pillars at one end and on the stone foundation of the stone and cement sidewalk at the other.

The opening under the areaway was, in fact, an extension of the basement of the store building four feet into the street. The areaway was constructed in 1899 by John Plain, the owner of the building, and during all that period the city had made no inspection from below to ascertain the condition of the areaway or its supports. The evidence tends to show that the basement under the store, including the space under the areaway, was damp, this condition being apparently, in part, the result of the action of water and snow which came through an opening or ventilator in the cement sidewalk and connecting with the areaway about the place where the two sections collapsed; that the iron beam which supported the two sections of the areaway which fell had broken in two, some of the witnesses testifying that the break was partly an old one of long standing and partly a fresh one, and others that the break was an old one and that there were no indications of a fresh break; that this beam and the other parts of the iron-work composing a part of the areaway construction had deteriorated greatly from rust. The evidence also tends to show that the unsafe condition of the iron beam which supported these two sections of the areaway could have been discovered by an inspection from the opening or basement below the areaway; but the evidence is uncontradicted, and includes that of appellee's witnesses, that it could not have been discovered from the upper surface of the sidewalk, and that, so far as surface indications were concerned, the areaway was apparently in a safe condition.

While it expressly disclaims that it relies upon any such ground for reversal, appellant calls attention to the fact that appellee did not offer to prove whether the fee to this street was in the city or in the abutting lot owner, and suggests that the case might be reversed for that reason. In the absence of any proof as to who owns the fee, it is a presumption of law that the fee of a street is in the city. (*City of Chester* v. *Wabash, Chester and Western*

*Railroad Co.* 182 Ill. 382; *City of Springfield* v. *Postal Telegraph Co.* 253 id. 346.) So far as the determination of the question here involved is concerned, it is immaterial whether the fee of this street was in the city or in the abutting lot owner. If the fee was in the city, the abutting lot owner would have no right to excavate under the sidewalk without the consent of the city, and then only upon such terms as the city should impose. If the fee was in the abutting lot owner, he would have the right to make any use of the street not inconsistent with the public use. In either event, if an excavation of this kind is to be made beneath the sidewalk, it would be the duty of the city to specify the kind of structure to be erected to support the surface of the sidewalk and to require its specifications to be carried out.

The only question presented and argued before us is, whether, under such circumstances as are presented in this case, the city is under any obligation to inspect that part of the supporting structure underneath the sidewalk, and whether it is bound to take notice of any defect that is not apparent at or from the surface of the sidewalk. Appellant cites and relies upon a number of cases which hold that there is no duty of sub-structure inspection of sidewalks imposed upon a city. With but one exception these cases all refer to sidewalks which are laid upon the ground, so that what was said in those cases can have no application to this case and is of no binding force here.

An action will lie against a municipal corporation for damages growing out of a neglect to perform a legal duty. (*Clayburgh* v. *City of Chicago,* 25 Ill. 440; *City of Springfield* v. *LeClaire,* 49 id. 476.) It is the duty of a city to use reasonable care to keep its sidewalks in a reasonably safe condition for the use of the traveling public, (*City of Springfield* v. *LeClaire, supra; City of Chicago* v. *Dalle,* 115 Ill. 386; *Hogan* v. *City of Chicago,* 168 id. 551; *City of Mattoon* v. *Faller,* 217 id. 273;) and a neglect to per-

form that duty, resulting in damage to a person exercising due care, will render the city liable for damage sustained.

In *City of LaSalle* v. *Porterfield,* 138 Ill. 114, a situation very similar to the one now under consideration was presented. In that case the city of LaSalle complained of the refusal of an instruction to the effect. that if the street in which the defect was alleged to have existed had been properly and safely constructed and up to the time of the injury appeared to be in a proper and safe condition, then, if the officers of the city had no actual knowledge of the defect, the city was not liable for the injury and the jury should find it not guilty. In sustaining the action of the court in refusing this instruction we said: "This, it will be observed, assumes that appellee's officers owed no affirmative duty of observation and inquiry to ascertain whether its bridges, culverts, etc., were, in fact, safe for public travel. It is the duty of municipal officers to use ordinary care in keeping its bridges, culverts, etc., in a safe condition for public travel, and this involves the anticipation of defects that are the natural and ordinary result of use and climatic influences; and so, wherever there is neglect on the part of the proper officer to make a sufficiently frequent examination of a particular structure, a municipality will not be relieved from liability although the defect may not be open and notorious.—Elliott on Roads and Streets, 462, and authorities there cited. See, also, to like effect, *Village of Fairbury* v. *Rogers,* 98 Ill. 557; *City of Sterling* v. *Merrill,* 124 id. 522; *Stebbins* v. *Keene,* 55 Mich. 552."

In *City of Rock Island* v. *Starkey,* 189 Ill. 515, (a sidewalk case,) the city complained of an instruction which advised the jury that in considering the obligation of the city to use reasonable care the jury might consider what kind of a sidewalk it was. In holding that the instruction was not objectionable we there said: "In determining the question of the care of the city in inspecting the sidewalk and keeping it in reasonably safe condition, the jury might

properly consider the material of which it was constructed and the manner of construction with reference to decay and probable need of repair."

In the case at bar the proof tended to show that under favorable climatic conditions the construction was of such a character as might be reasonably expected to last for fifty years. Yet the city was bound to take notice of the method of construction and the surrounding conditions and to anticipate the natural and ordinary result of climatic influences, and it was incumbent upon it to make sufficiently frequent examinations to ascertain whether the structure was becoming so deteriorated, through climatic or other natural influences, as to endanger the safety of the public. The space underneath this areaway was not used for any purpose except to afford light to the basement of the store building and to provide space for the steam pipes to pass through from the street to connect with the heating apparatus of the building. The owner was bound to afford access to the proper officer for the purpose of making an inspection, and there was no obstruction to prevent an examination from below. The jury were fully warranted in believing, from the evidence, that the defective condition had existed for a long time and that the most casual examination would have disclosed the dangerous condition of the structure.

Appellant cites and relies upon the case of *Buckley* v. *Kansas City*, 156 Mo. 16, a case in which the facts are almost identical with those here and in which the court held the city was not liable. The holding in that case is contrary to the rule in this State, and we decline to follow it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*