Adeline Baker, Appellant, v. City of Granite City, Appellee.

588

Heard in this court at the May
term, 1941.                                    Opinion filed
October 27, 1941.

BEN M. CREAMER, of East St. Louis, and FRANK E. DOYLE, of St. Louis, for appellant.

ROSCOE FORTH, of Granite City, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.

Plaintiff while walking on a public sidewalk in Granite City stepped on the cover of a catch basin. The cover tilted and slid aside and she fell into the basin She brought this action against the city to recover for the injuries she sustained. The case was submitted to a jury and a verdict of $500 was returned in favor of plaintiff. On defendant's motion the court entered a judgment for the defendant notwithstanding the verdict. To reverse such judgment, plaintiff has taken this appeal.

The specific charge of negligence in the complaint was that defendant carelessly and negligently permitted such cover to remain in a dangerous and unsafe condition, and knew or by the exercise of reasonable care could have known that the catch basin was a dangerous trap, endangering the life and limb of any pedestrian who might walk thereon.

The catch basin referred to was located in the sidewalk at the southeast corner of the intersection of two streets in Granite City. It was about three feet deep and was covered with an iron lid which was level with and was an integral part of the sidewalk. This cover was about 22 inches in diameter and rested in place on the flange of a circular iron rim or base.

Plaintiff testified that about 1:00 p. m. on October 9, 1939, while walking along the sidewalk she stepped on the cover of the catch basin; that before stepping on it

she saw the cover; that the cover "looked all right, and there was nothing apparently wrong with it"; that when she stepped on the cover it tilted and slipped off and she fell into the basin; that a man named McGee helped her out; that after getting out of the catch basin she carefully observed the flange or rim around the basin on which the cover rested and such flange was "very much corroded with rust" and was "filled with rust and corrosion"; that the cover was uneven around the edge and "beveled off until it was as thin as a piece of cardboard," and that the lower edge of the cover was "sort of worn off."

McGee, a witness for plaintiff, testified that while he was sitting on the curb at the corner waiting for a streetcar he heard an outcry from the plaintiff and turned around and saw her in the catch basin and helped her out; that they replaced the cover and that about that time the streetcar came along; that he did not have an opportunity to observe or examine the condition of the cover because it was necessary for him to take the streetcar and that he and the plaintiff boarded the streetcar together.

The trial of this case took place on November 15, 1940. One Harmon, assistant superintendent of streets, a witness for defendant, testified: "The lid (cover) had been on there probably two years, up to the present time. I helped put it on there, at which time it was new. . . . They were on there about two years prior to now. Mr. Curtwright and I put them on. . . . I don't know how long prior to October, 1939, it was actually put on there, but I believe in the spring of 1939. I am sure it was. It was new in the spring and this happened in October." Curtwright, a witness for defendant, testified he was superintendent of streets and that "I am pretty sure it (the cover) was put on there in the spring of 1939 by Mr. Harmon and myself. . . . I am positive that lid was put on there

new in the spring of 1939. . . . There was a very little rust on the bottom of the lid when it was installed in the spring of 1939. There is a good deal on it now, the result of moisture in the catch basin.''

Defendant's witnesses testified that the flange was not replaced at the time the new cover was installed, but had been in and a part of the catch basin for some unknown period prior to such time; that no other cover was thereafter placed over the catch basin prior to the accident; that prior to the accident the city had received no complaint about any unsafe or dangerous condition of the catch basin or cover; that Harmon and Curtwright examined the catch basin and cover immediately after the accident and found the cover in place; that they then walked over the cover to see if it would jump off when stepped on and found that it did not, and that from the time the lid or cover was first placed on the basin until the accident no inspection had been made of the cover or flange on which it rested.

Defendant produced in court, but did not offer in evidence, a catch basin cover which Harmon identified as being the cover in question. Plaintiff testified that such cover so produced was not the cover in question and we must assume her testimony to be true.

The foregoing in substance is all of the material testimony other than the evidence on injuries.

The only question presented is whether or not the trial court erred in entering the judgment notwithstanding the verdict.

In passing on a motion for the entry of a judgment notwithstanding the verdict the rule applicable on motions for a directed verdict must be applied. The evidence must be considered in its aspect most favorable to the plaintiff, together with all reasonable inferences therefrom. The evidence cannot be weighed but the court is required to assume that the evidence favorable to the plaintiff is true. All contradictory or

explanatory circumstances must be rejected. The only inquiry is whether there is any evidence fairly tending to prove the plaintiff's complaint. (*McNeill v. Harrison & Sons, Inc.*, 286 Ill. App. 120; *Hunter v. Troup*, 315 Ill. 293; *Sherwin v. City of Aurora*, 257 Ill. 458.)

Applying the foregoing rules of law, if there was any evidence fairly tending to prove (1) that the plaintiff was injured; (2) that at and immediately prior to receiving such injury she was in the exercise of reasonable care for her own safety; and (3) that she was so injured through the negligence of the defendant as charged, then the trial court erred in entering such judgment regardless of the weight of the evidence.

There can be no question but what the evidence fairly tends to prove that the plaintiff received substantial injuries.

In our opinion the evidence fairly tends to show that the plaintiff was in the exercise of due care for her own safety at and immediately prior to the time of receiving such injuries. She had the right to assume that the sidewalk was in a reasonably safe condition for travel, and it cannot be said as a matter of law that she was absolutely bound to keep her eyes fixed upon the sidewalk in search of defects and dangerous places. (*City of Chicago v. Babcock*, 143 Ill. 358.)

Assuming the testimony most favorable to the plaintiff to be true, as we are required to, such evidence, taken in its aspect most favorable to the plaintiff, fairly tends to prove that the cover over the basin had become thin and uneven around its edge from wear and use, and that an accumulation of rust and corrosion, due to moisture and other climatic and natural conditions, had formed and collected underneath the cover so as to fill the flange. The filling-in around the flange with such rust and corrosion, coupled with the

thinness of the cover, could warrant the jury in finding that such condition had the effect of raising the cover from a firm position on the flange to a loose or unstable one, causing the cover to tilt when stepped upon as was done by the plaintiff in this case. In our opinion the evidence fairly tended to show that such cover as a part of the sidewalk was not in a reasonably safe condition for the use of the traveling public, but was in a dangerous and unsafe condition as charged in the complaint.

It was the duty of the defendant city to use reasonable care to keep the sidewalk in question in a reasonably safe condition for the use of the traveling public. (*Graham v. City of Chicago,* 346 Ill. 638.) Before the defendant could be held liable it must appear that it had actual or constructive notice of the alleged unsafe condition (*Boender v. City of Harvey,* 251 Ill. 228), but notice could be imputed if such condition existed for such a length of time that the public authorities by the exercise of reasonable care and diligence might have known of such condition. (*Powell v. Village of Bowen,* 92 Ill. App. 453.) Generally it is a question of fact for the jury whether a city has had notice of a defect. (*Boender v. City of Harvey, supra.*) In *Sherwin v. City of Aurora, supra,* the question arose whether a city was under obligation to inspect the supporting structure underneath a sidewalk and whether it was bound to take notice of defects not apparent from the surface of the sidewalk. The court held that the city was bound to take notice of the method of construction and surrounding conditions and went on to say: ''It is the duty of municipal officers to use ordinary care in keeping its bridges, culverts, etc., in a safe condition for public travel, and this involves the anticipation of defects that are the natural and ordinary result of use and climate influences; and so, wherever there is neglect on the part of the proper officer to make a sufficiently frequent

examination of a particular structure, a municipality will not be relieved from liability although the defect may not be open and notorious.'' We believe this rule of law is applicable to the facts in this case.

It is not claimed the defendant had actual notice of the condition in question. Defendant contends that the city can not be charged with constructive notice because there is no proof that such condition existed for any length of time whatever. It is true no witness testified that the condition of the cover and rim of the catch basin as described by plaintiff had existed for any length of time prior to the accident. The testimony most favorable to the plaintiff shows, however, that the flange was ''filled with rust and corrosion,'' and that the lower edge of the cover was worn off ''as thin as a piece of cardboard.'' Defendant's superintendent of streets testified that there was ''a very little'' rust on the bottom of the cover when it was installed and ''a good deal'' of rust on it at the time of the trial, ''the result of moisture in the catch basin.'' It is a matter of common knowledge that iron will often rust and corrode when exposed to water and weather and that such rust and corrosion do not generally occur to any considerable extent or degree in a short period of time. It could reasonably be inferred by the jury that the condition in which the flange and cover was shown to be at the time of the accident was not created in a short period of time, but gradually came about over a considerable period of time, and it could be reasonably inferred by the jury that the presence of such rust and corrosion and the worn condition of the cover might have been discovered and remedied on reasonable inspection. What was reasonable inspection was a question of fact for the jury.

It is undisputed that the flange had been installed for some unknown period of time prior to the time when the cover was installed, and the record is silent

as to whether the flange was free from rust and corrosion at the time the cover was installed. It is admitted that no inspection was made of the cover from the time it was first installed until after the accident, the time of installation appearing to be, at least six months before the accident.

The rule of law applicable to such a situation is laid down in *City of Ottawa v. Hayne,* 114 Ill. App. 21, where the court said: "The law fixes no exact limit as to what is a sufficient time for an obstruction or defect to exist in order to charge a city with implied notice. In this respect each case must be determined from all the surrounding circumstances. It is a question of fact for the jury to determine in view of all the facts and circumstances. *City of Decatur v. Besten,* 169 Ill. 340." (Also see *City of Savanna v. Trusty,* 98 Ill. App. 277.) In our opinion it was peculiarly within the province of the jury to determine whether or not the alleged defective conditions were of such a character and had existed for such a length of time that the defendant might have discovered and remedied them, and to determine whether or not the defendant was negligent in this respect. (See *Chicago & Western Suburban Exp. Co. v. City of Berwyn,* 174 Ill. App. 543.

For the reasons indicated it is our opinion that the trial court erred in granting the motion of the defendant for a judgment notwithstanding the verdict and in entering judgment in favor of the defendant.

The judgment of the city court is therefore reversed and the cause is remanded to such court with directions to overrule the motion of the defendant for a judgment in favor of the defendant notwithstanding the verdict, and to pass upon the motion for a new trial, if one shall be made by defendant, and if such motion for new trial is overruled, or if such motion for a new trial is not made, to enter judgment on the verdict in favor of the plaintiff.

*Reversed and remanded with directions.*