2 Ill. App.3d 1004 (1971)
276 N.E.2d 470
NORMA JEAN PALERMO, Plaintiff-Appellee,
v.
THE CITY OF CHICAGO HEIGHTS, Defendant-Appellant.
No. 55019.
Illinois Appellate Court  First District.
November 12, 1971.
*1005 Scariano and Gubbins, of Chicago Heights, (Michael B. Gubbin, of counsel,) for appellant.
Stanley J. Horn and Steven B. Randall, of Chicago, (Gabriel Aprati, of Chicago Heights, of counsel,) for appellee.
Reversed and remanded.
Mr. JUSTICE DRUCKER delivered the opinion of the court:
*1006 Defendant appeals from a judgment awarding plaintiff $5500 for personal injuries received when plaintiff fell into a water meter box maintained by defendant on a parkway. The case was tried without a jury.
On appeal defendant contends: (1) that the defendant had neither actual nor constructive notice of the defective water meter cover; (2) that defendant was free from negligence as a matter of law; and (3) that plaintiff was guilty of contributory negligence as a matter of law.
On September 25, 1967, plaintiff drove her car to 1443 East End Avenue, Chicago Heights, Illinois, to visit her friend, Mrs. Ida Alexander. East End Avenue runs in a north-south direction and plaintiff parked her car, facing north, on the east side of the street, the side on which Mrs. Alexander's house was located. Plaintiff arrived at the house at about 6:00 P.M.
The pertinent testimony is as follows: Plaintiff testified that there was a curb running north and south in front of the house next to which she parked. A sidewalk ran in front of the house parallel to the curb. Between the curb and sidewalk was a parkway. A cement crosswalk ran in an east-west direction extending from the street curb to the sidewalk. Plaintiff parked her car "a little bit south" of this cement crosswalk. She got out of her car on the passenger side since the driver's door was broken. She crossed the parkway and went into the house. She did not notice the meter box.
Plaintiff visited with Mrs. Alexander and then left at about 7:40 P.M. It was twilight and the visibility was good. She left by the back door which was on the south side of the house and walked west on a path to the sidewalk. She opened the gate in front of the house and crossed the sidewalk "proceeding to my car." While crossing the parkway she "stepped on a lid and it tilted and * * * flipped over * * *." Plaintiff's right leg went into the hole up to her buttocks. She did not see the lid prior to stepping on it. She had been looking at her car door.
On cross-examination plaintiff stated that she had previously visited the Alexanders' house about ten times but had never noticed the water meter box. The meter box was located in the parkway about two feet south of the cement crosswalk which ran from the street curb to the sidewalk. The passenger door of her car was "back a little ways" from the cement crosswalk. The path leading from the Alexanders' back door to the sidewalk was two sidewalk sqaures south of the crosswalk. There was a tree "fairly close" to the water meter box. She described the lid as about the size of a ten inch pizza and assumed that it was partly on because as soon as her toe hit it she went straight down and the lid flipped over.
*1007 As a result of the fall plaintiff suffered soft tissue injuries requiring hospitalization. She also lost time from work.
Mrs. Ida Alexander testified for the plaintiff. She and her husband resided at 1443 East End Avenue, Chicago Heights, Illinois. Four weeks before the accident she observed that the lid "[w]asn't all the way on. It was holding on with one screw, a bolt, or whatsoever you would call it. And all you had to do was just knock it aside. If you touched it, it would fall off."
Over defendant's objection Mrs. Alexander stated that her husband had telephoned the "water company" approximately six weeks before the date of the accident to complain about the condition of the lid. She was sitting next to her husband when he made the call. On cross-examination Mrs. Alexander said that she heard her husband say into the phone, "Will you send someone down here to fix this water hole because the cap is off of it and we have a lot of small children in the back and some of them might fall in it." She did not know what number her husband had dialed. Her husband subsequently said that someone did come out and they did do something to the water hole but it didn't last long. She did not know how long the cover remained fixed but that her husband was awfully angry about it. She never noticed what they did to fix it but it was not fixed when she went to the hospital two weeks prior to the accident. She stated that kids were playing in it but did not know if they played with it after defendant had been out to fix it.
Her husband was not present at the trial having gone to a funeral.
Joseph Faso testified for the defendant. He is the City Commissioner of Waterworks. He described the particular water meter as covered by a steel lid about eleven or twelve inches in diameter and protruding one and one-half inches above the ground. The steel lid is bolted down exactly in the center. The meter was located on the south side of a three foot wide crosswalk which ran from the street curb to the sidewalk. The meter was "on the outside of this crosswalk at approximately five to six feet from the curb." The records of his department showed that no complaint was registered prior to the date of the accident regarding the condition of the water meter box. Meter boxes are inspected on a quarterly basis unless a specific complaint is made to the water department.
Over plaintiff's objection Faso testified that Mr. Alexander came to see him at his private place of business about two or three days after the accident; that after discussing business, Mr. Alexander told him that a lady had tripped on the meter; that it was loose and that perhaps this could have been caused by children who are continually playing with this meter vault cover.

*1008 Opinion

Defendant first contends that as a matter of law it had neither actual nor constructive notice of the defective water meter cover. Both parties agree that defendant must have had notice of the alleged defect to be held liable.[*]
 1, 2 Defendant argues that testimony of Mrs. Alexander concerning the telephone call made by her husband which allegedly gave defendant actual notice of the defective meter cover was erroneously admitted into evidence. We agree. Telephone conversations which are relevant and material to the issue are competent if the parties to the conversations are identified by direct evidence or facts and circumstances. (People v. Powloski, 311 Ill. 284.) However, where a bystander merely presumes the identity of the other party to the conversation, as is the case here, evidence relating to what the bystander heard one party say is incompetent. Bates v. Estate of Cronin, 196 Ill. App. 178. See Miles v. Andrews, 153 Ill. 262.
 3-5 Constructive notice is present where a defective condition exists for such a length of time that public authorities, by the exercise of reasonable care and diligence, might have known of the condition. (Baker v. City of Granite City, 311 Ill. App. 586.) Factors to be considered are the conspicuity of the defect and the length of time it existed. (Trojan v. City of Blue Island, 10 Ill. App.2d 47, 50.) The issue is generally one for the trier of fact and becomes a question of law only if "all of the evidence, when viewed in its aspect most favorable to [the plaintiff here] * * *, so overwhelmingly favors the [defendant here] * * * that no contrary [finding] * * * based on that evidence could ever stand." Pedrick v. Peoria & Eastern R.R. Co., 37 Ill.2d 494, 510.
In the instant case Mrs. Alexander testified that she saw the loosely attached meter cover four weeks prior to the accident. However, it is unclear what, if anything, happened thereafter. She did state definitely that she saw the loosely attached cover two weeks before the accident.
The water meter was not conspicuous being in the parkway next to a tree and protruding only about one inch and one-half above the ground. Moreover, the evidence showed that the defect itself was even less conspicuous. Mrs. Alexander testified that two weeks prior to the accident the lid was loosely attached by a bolt or a screw. Plaintiff testified that she assumed the cover to be lying on top of the meter because she did not *1009 step down into an empty hole. Rather, her toe first hit the lid and it "flipped over."
 6 The defendant city cannot be expected to inspect each of its meters every month. Also, the defect here was not as easily observable as an openly exposed crack or hole in a sidewalk. It consisted of a bolt loosely attached to a meter cover. We conclude that as a matter of law defendant had no constructive notice of the defective meter lid since it existed only two weeks or at most four weeks and was not plainly visible. Since there was neither actual nor constructive notice to defendant, the defendant is not liable.
In view of this determination we need not consider defendant's other contentions. The cause is reversed and remanded with directions to enter judgment for the defendant.
Reversed and remanded with directions.
ENGLISH, P.J., and LORENZ, J., concur.
NOTES
[*] "Except as otherwise provided in this article, a local public entity * * * shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such condition." S.H.A. ch. 85, par. 3-102(a).