MARGARET PINTO, Plaintiff-Appellee, v. JOHN DeMUNNICK *et al.*, Defendants-Appellees (The Village of Alsip, Defendant-Appellant).

First District (4th Division)   No. 85—3717

Opinion filed March 31, 1988.

JIGANTI, J., dissenting.

Baker & McKenzie, of Chicago (Francis Morrissey, Patrick Reynolds, Gerald Maatman, Jr., and Donald Hayden, of counsel), for appellant.

Edwin J. Belz and Paul A. McWilliams, both of Chicago (Harvey L. Walner, of counsel), for appellee Margaret Pinto.

Orner & Wasserman, Ltd. (Norton Wasserman and Ester Schwartz, of counsel), for appellees John DeMunnick and Bernadette DeMunnick.

JUSTICE McMORROW delivered the opinion of the court:

Defendant Village of Alsip (Village) appeals from a judgment entered upon a jury verdict which found that the Village negligently failed to inspect and maintain its storm sewers and parkways, thereby causing personal injuries to plaintiff Margaret Pinto (Pinto) when she fell in a parkway sinkhole. Because we conclude that Pinto's evidence failed to establish that the Village had notice that the parkway was not in a reasonably safe condition prior to the injury, we reverse and remand.

BACKGROUND

On September 18, 1982, Pinto was leaving the apartment of friends who lived in Alsip, Illinois. Her husband accompanied her to an automobile parked in front of the apartment building. To reach the car, she crossed the front lawn of the building, the sidewalk, and the adjoining parkway located in front of the property owned by John and Bernadette DeMunnick. It was dark and she was looking straight ahead at the car. As she stepped back to allow her husband to open the door, she fell into a hole in the parkway that was about six to eight inches in diameter and covered with grass. As a result of the fall, she sustained injury to her left knee, requiring surgery and physical therapy, and incurred medical expenses totalling $8,014. She also has permanent scars and indentations on her legs and is unable to enjoy many day-to-day activities because of the injury. Pinto brought this negligence action against the private landowners, John and Bernadette DeMunnick, and the Village of Alsip.

The following pertinent evidence was presented by Pinto. When the hole first appeared in June 1982, DeMunnick filled it. It reappeared in July or August, and again he filled it. His wife, Berna-

dette, did not notice the hole five days prior to the accident when she mowed and fertilized the lawn. After the accident, DeMunnick inspected the hole; it was about five to six feet deep, running towards the street. Once again, DeMunnick filled the hole.

It was not until sometime after the injury that DeMunnick notified the Village of the recurring hole. Upon this sole notification, Jack Redmore, Village superintendent of public works, went to the site, inspected the hole, and found that it was six to eight inches in diameter, about two feet deep, and ran towards the street. DeMunnick and Redmore lifted the two manhole covers on the street and looked into the sewer. DeMunnick testified that under one of the manhole covers the sewer was full of mud and dirt, while Redmore testified that there might have been some mud in the system but that he did not recall any quantity of it. Redmore stated that if there was a crack in the storm lines or a separation in the pipes, there would be mud and dirt in the pipes. However, he said it was normal to have some mud in the pipes since the storm lines drain the streets.

Redmore instructed two Village employees to dig up the DeMunnicks' parkway, inspect the storm line that ran underneath the parkway, and investigate the cause of the hole. When the employees went to the site and inspected the hole, they found that it was about a foot deep and was not an animal hole. They dug down to the pipe to see whether the pipe ring was broken and found there was no break in the pipe. They did not replace any pipe. However, they did repair a part of the pipe ring which one of them had damaged in the process of digging out the pipe.

Redmore testified that storm pipes were placed four to five feet under parkways, were 12 inches in diameter, and were six feet long. Water seepage from broken or cracked storm lines causes "sinkholes." Sinkholes drop straight down into the ground, in contrast to gradual dips or depressions, Redmore said. Redmore agreed that sinkholes were a common problem with the Village drainage system, but that this was the first complaint of a "sinkhole on the parkway" received by the Village. He also testified that sinkholes are easily detectable by looking in the sewer to check for an accumulation of mud. The Village, however, did not have any inspection system. Redmore indicated there were about 73 miles of streets, 2,500 manhole covers, and 15,000 inhabitants in the Village.

At the close of Pinto's case in chief, the DeMunnicks and the Village each moved for a directed verdict. The trial court denied both motions. The jury found for the plaintiff, against all the defendants,

and awarded Pinto $125,264.03 in damages. The jury also found that Pinto was not contributorily negligent and attributed 30% of the negligence to the DeMunnicks and 70% to the Village.

The Village appeals from the trial court's denial of its motion for a directed verdict, the judgment entered on the verdict, and the order denying the Village's post-trial motion.

OPINION

On appeal, the Village contends that because Pinto failed to establish her *prima facie* case, the trial court's denial of the Village's motion for a directed verdict must be reversed. The Village argues that Pinto failed to establish any actual or constructive notice to the Village that the hole existed and that it had been caused by a defect in the sewers. The Village asserts that absent notice of these dangerous conditions, it is not liable for injuries resulting therefrom.

■■ A local public entity "shall not be liable for injury unless it is proven that it has actual or constructive notice of such a condition that it is not reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such condition." (Ill. Rev. Stat. 1985, ch. 85, par. 3—102.) The burden of proving notice is on the party charging notice. (*Reed v. Eastin* (1942), 379 Ill. 586, 592, 41 N.E.2d 765; *Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 246, 476 N.E.2d 427.) The question of notice is generally one of fact, but becomes a question of law if all the evidence when viewed in the light most favorable to the plaintiff so overwhelmingly favors the defendant public entity that no contrary verdict could ever stand. *Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 245-46, 476 N.E.2d 427; *Cook v. Gould* (1982), 109 Ill. App. 3d 311, 316, 440 N.E.2d 448; see also *Hollembaek v. Dominick's Finer Foods, Inc.* (1985), 137 Ill. App. 3d 773, 780.

Where a condition has existed for such a length of time, or was so conspicuous, that authorities exercising due diligence might have known of it, the plaintiff has established notice. (*Buford*, 131 Ill. App. 3d 235, 476 N.E.2d 427.) Also, notice of facts which would put a reasonably prudent person on inquiry render the authorities chargeable with knowledge of any fact that might be discovered by a reasonable investigation. See *Palermo v. City of Chicago Heights* (1971), 2 Ill. App. 3d 1004, 276 N.E.2d 470.

■■ ■ Based upon a review of the record, we conclude that Pinto failed to establish that the Village had actual or constructive notice that the parkway was not in a reasonably safe condition prior to the

injury. According to the testimony, DeMunnick's wife did not see the hole when she mowed and fertilized the lawn five days before the injury; she also testified that she never saw the hole prior to the accident. DeMunnick testified that the hole first appeared in June 1982 but that he filled in the hole both times it appeared. He also stated that subsequent to the second time he filled the hole, in July or August, he mowed the lawn and did not notice any hole, although he did not specifically look for the hole or intentionally walk over the area where it had been. Under these circumstances, we find that Pinto failed to present sufficient evidence that the hole was plainly visible or that the hole was apparent for so long a time prior to the injury to permit an inference that the Village was constructively notified of the existence of the hole. (See *Palermo v. City of Chicago Heights* (1971), 2 Ill. App. 3d 1004, 276 N.E.2d 470.) It would be an unreasonable burden to place upon the Village to expect it to inspect for holes in a parkway lawn, absent any notice that a hole existed in the parkway lawn or absent any notice that a defect in one of its systems might cause a dangerous condition on the parkway.

Furthermore, Pinto failed to establish that the hole on the De-Munnicks' parkway was a sinkhole, such that a diligent inspection of the sewers would have revealed the existence of the hole. DeMunnick testified at trial that he observed a great deal of mud and dirt in the sewer under the manhole cover near his property. Although DeMunnick's testimony stands uncontradicted, any inference that the hole was a sinkhole caused by a sewer leak was overcome by the uncontroverted testimony of the Village employees who inspected the pipe below the hole, found no leak, and found nothing that would cause a leak. Because Pinto failed to show that a sewer leak caused the hole, we cannot charge the Village with knowledge of the hole based on no more than their awareness of a general sinkhole problem in the municipality's drainage system.

The DeMunnicks argue that the Village failed to demonstrate the municipality had established a reasonable inspection program in accordance with section 3—102(b) of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 3—102(b)). However, because it was not established that the Village received either actual or constructive notice of the hole in its parkway, we need not address this argument. *Cf. Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 246-49, 476 N.E.2d 427.

We conclude that the trial court erred in denying the Village's motion for a directed verdict. As a result, we need not and do not

address the Village's other arguments. We reverse the judgment of the circuit court of Cook County and remand the case for proceedings consistent with the views stated herein.

Reversed and remanded.

JOHNSON, J., concurs.

JUSTICE JIGANTI, dissenting:
Margaret Pinto brought this action against the Village of Alsip contending that the Village was negligent in maintaining its parkway. A jury returned a verdict in favor of Pinto and against the Village. The majority concludes that as a matter of law Pinto had not presented sufficient evidence of the negligence of the Village, reasoning that the Village did not have constructive notice of the condition of the parkway.

Whether there is sufficient evidence to permit an inference of negligence as opposed to mere speculation is a question of judgment. (*Consolino v. Thompson* (1984), 127 Ill. App. 3d 31, 33, 468 N.E.2d 422.) These factual settings ordinarily are not precedential. (*Consolino v. Thompson*, 127 Ill. App. 3d 31, 468 N.E.2d 422.) In my judgment, the jury was properly within its province in drawing the inference that the Village was negligent. Consequently, I respectfully dissent.

The Village has a statutory duty to maintain its property in a "reasonably safe condition." However, the statute provides that the Village shall not be liable for injury "unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such condition." (Ill. Rev. Stat. 1985, ch. 85, par. 3—102(a).) In discharging its duty to maintain its property in a reasonably safe condition, a Village has an affirmative duty to observe, to inspect and to inquire in order to ascertain whether an area is safe. (*Roberts v. City of Sterling* (1959), 22 Ill. App. 2d 337, 347-48, 161 N.E.2d 138.) It has been held that a municipality must anticipate defects that are the natural and ordinary result of climatic influences. (*Roberts v. City of Sterling* (1959), 22 Ill. App. 2d 337, 161 N.E.2d 138; *Sherwin v. City of Aurora* (1913), 257 Ill. 458, 464, 100 N.E. 938; *Baker v. City of Granite City* (1941), 311 Ill. App. 586, 592, 37 N.E.2d 372.) Ordinarily the question of constructive notice is a question of fact for the jury. *Baker v. City of Granite City* (1941), 311 Ill. App. 586, 592, 37 N.E.2d 372.

The Village here made no inspections and had no plans for making inspections. Twice in the months immediately before this occurrence there had been holes in the parkway that had to be filled. The plaintiff sank into the hole in the parkway up to her thigh. The Village had a duty to maintain the parkway and an affirmative duty to make inspections, which it failed to do. Under these circumstances, I believe it was appropriate for the jury to determine whether, as a matter of fact, the Village had constructive notice and therefore whether the Village maintained its property in a reasonably safe condition.