CATHERINE M. COULTAS, Plaintiff-Appellant, v. THE CITY OF WIN-CHESTER, Defendant-Appellee.

Fourth District   No. 4—90—0542

Opinion filed February 7, 1991.

Thomson, Mann, Mann, Mitchell & McNeely, P.C., of Jacksonville (Charles E. McNeely, of counsel), for appellant.

Deborah L. Rose, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Springfield, for appellee.

PRESIDING JUSTICE LUND delivered the opinion of the court:

Plaintiff Catherine Coultas appeals from the judgment of the circuit court of Scott County entered on a jury verdict in favor of defendant, the City of Winchester (City), in her action to recover damages for personal injuries sustained in a fall on a city sidewalk. We affirm.

On Saturday, October 31, 1987, plaintiff tripped and fell as she walked down a newly constructed wheelchair ramp on a public sidewalk. As a result of her fall, plaintiff suffered a fractured patella of the right knee. Plaintiff brought an action to recover damages for her injuries, naming as defendants the City of Winchester and George Brown, the general contractor who had constructed the ramp. Brown was later dismissed as a defendant upon plaintiff's motion.

The cause proceeded to trial where the following facts were established. In October 1987, the defendant and a group of property owners hired Brown to remove an old section of sidewalk in the downtown area of Winchester and replace that section with a new sidewalk. Additionally, Brown was to remove the curb at the north end of the sidewalk where it intersected with Lynn alley and install a wheelchair ramp. Defendant's custom was to split the cost of a new sidewalk between the City and the owners of the property adjacent to the new sidewalk. Bill Cumby, chairman of the streets and alleys committee, informed Brown that, as lowest bidder, he was awarded the job. Cumby stated that no one from the City was assigned to inspect the work.

Dan Hankins, superintendent for streets and alleys, assigned City employees to haul broken concrete away from the work site. Hankins did not inspect the job because he did not consider that to be part of his duties. Brown completed the work on Wednesday, October 28, or Thursday, October 29, 1987, and put up barricades at each end of the sidewalk. He removed the barricades late in the afternoon on Friday, October 30, 1987.

At about 1:30 p.m. on Saturday, October 31, 1987, plaintiff left Baker's Pharmacy and walked north toward the IGA store on the new sidewalk. As she walked down the wheelchair ramp into Lynn alley, she stubbed her toe and fell on her right knee. Although plaintiff did not see what caused her fall, Paul Newberry, who was walking behind her, testified that a concrete protrusion was in her path at the bottom of the

ramp where she fell. He described the protrusion as an odd-shaped piece of concrete about six inches long and two to three inches high.

Plaintiff moved for a directed verdict on the issue of notice, contending that, as a matter of law, the defendant had notice of the condition in which the work was left. The court denied plaintiff's motion and instructed the jury as follows:

> "A municipality shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition."

On appeal, plaintiff contends that the trial court erred in denying her motion for a directed verdict on the issue of notice. We disagree.

■ The liability of a municipal corporation is governed by the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1987, ch. 85, par. 1—101 *et seq.*). The Act has essentially continued common-law duties respecting the liability of a municipality in the maintenance of its public ways and adds no new duties to those which existed prior to its codification. (*Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 87, 522 N.E.2d 215, 218, *appeal denied* (1988), 121 Ill. 2d 586, 526 N.E.2d 839; *Charpentier v. City of Chicago* (1986), 150 Ill. App. 3d 988, 996, 502 N.E.2d 385, 390.) Section 3—102(a) of the Act provides:

> "(a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a).

■ Constructive notice is present where a defective condition exists for such a length of time that public authorities, by the exercise of reasonable care and diligence, might have known of the condition. (*Pinto v. DeMunnick* (1988), 168 Ill. App. 3d 771, 774, 523 N.E.2d 47, 50; *Baker v. City of Granite City* (1979), 75 Ill. App. 3d 157, 161, 394 N.E.2d 33, 35; *Livings v. City of Chicago* (1975), 26 Ill. App. 3d 850, 854, 326 N.E.2d 170, 174.) It is generally a question of fact for the jury to determine whether a defective condition has existed for a sufficient

period of time prior to the injury and was of such a character for the City to be deemed to have constructive notice. However, where the facts are undisputed and but one reasonable inference can be drawn from them, it then becomes a question for the court. (*Pinto*, 168 Ill. App. 3d at 774, 523 N.E.2d at 50; *Livings*, 26 Ill. App. 3d at 854, 326 N.E.2d at 174.) In the instant case, the question of notice was properly left to the jury.

Plaintiff contends that "[i]t has long been held in Illinois that a municipality which causes work to be done, whether by its own employees or by an independent contractor, has notice of the condition in which the work was left, whether that condition is safe or dangerous." Plaintiff cites numerous cases as authority for the foregoing proposition, all of which are distinguishable from this case.

The cases plaintiff cites in which a municipality was charged with notice of an injury-causing defect or obstacle in a public way fall into two distinct factual categories. In *Dziewatkowski v. City of Chicago* (1969), 109 Ill. App. 2d 405, 248 N.E.2d 734, and *City of Chicago v. Brophy* (1875), 79 Ill. 277, the municipality itself had performed the work which caused the dangerous condition resulting in the plaintiff's injury. In *Village of Jefferson v. Chapman* (1889), 127 Ill. 438, 20 N.E. 33, *City of Chicago v. Johnson* (1869), 53 Ill. 91, *Cole v. City of East St. Louis* (1910), 158 Ill. App. 494, and *Lau v. City of Chicago* (1910), 153 Ill. App. 50, the plaintiffs were injured at construction sites prior to the completion of the work. All of these decisions note that it is the duty of the municipality to exercise reasonable care to prevent injury to passersby at such construction sites. The *Chapman, Cole,* and *Lau* decisions all characterize the construction undertaken as "dangerous" and turn upon the long-standing rule that the duty to keep an inherently dangerous condition safe cannot be delegated by a municipality. (*Chapman*, 127 Ill. at 447, 20 N.E. at 37; *Cole*, 158 Ill. App. at 500; *Lau*, 153 Ill. App. at 53-54.) The *Chapman* court, for example, explained that "one who authorizes a work which is necessarily dangerous, and the natural consequence of which is an injury to the person or property of another, is justly to be regarded as the author of the resulting injury." (*Chapman*, 127 Ill. at 444, 20 N.E. at 36.) Although the *Johnson* court does not characterize the construction site as inherently dangerous, it is noteworthy that the plaintiff in *Johnson* was injured in a deep ditch which was excavated on the side of a roadway. *Johnson*, 53 Ill. at 91-92.

In the instant case, the evidence indicates that the construction which resulted in the injury-causing defect was performed by an independent contractor. Hence, *Dziewatkowski* and *Brophy* provide no authority for charging the defendant with notice. Further, the work was

completed when the plaintiff sustained her injuries. Thus, the defendant's power to delegate the duty to keep the construction site safe as the work progressed was not at issue. In sum, plaintiff has provided no compelling authority to support her contention that the trial court should have held, as a matter of law, that the defendant had notice of the injury-causing condition. As the construction site was unbarricaded less than 24 hours before the plaintiff sustained her injuries, the jury could properly have concluded that the defective condition did not exist for a sufficient period of time prior to the injury for the defendant to be deemed to have constructive notice of the flaw in the concrete.

To charge the City with notice of a dangerous condition either *created or not remedied by the independent contractor would be* adding a condition to section 3—102(a) that is best left to the legislative process.

Affirmed.

GREEN and STEIGMANN, JJ., concur.