### Edwin E. Sherwin, Appellee, v. City of Aurora, Appellant.

### Gen. No. 5605.

1. NEGLIGENCE—*when city cannot escape liability.* When the city permits adjacent property owners to excavate a portion of its streets and to construct passage ways under the same, it cannot escape liability by saying that it owes no duty to the citizen who

properly uses them. If the city permits such use of the street, which otherwise would be safe for travel, it must exercise such diligence as would be required of a reasonably prudent person under all these circumstances. If the one so using the street performs that duty for the city it would be a defense, but if he fails to do it then the city must.

2. NEGLIGENCE—*obligation of city with respect to its streets.* The law makes it the duty of the city to exercise ordinary diligence to discover and repair defects, and one lawfully using the street has the right to assume that the city has performed that duty and that if a portion is not safe that notice thereof will be given in some way.

Action in case for personal injuries. Appeal from the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 13, 1912. Rehearing denied April 25, 1912.

CHARLES F. CLYNE and BENJAMIN P. ALSCHULER, for appellant; R. C. PUTNAM and J. C. JAMES, of counsel.

JOHN M. RAYMOND and JOHN K. NEWHALL, for appellee.

MR. JUSTICE MORTON W. THOMPSON delivered the opinion of the court.

The Plain building in Aurora is on Broadway, and in the business part of the city. A part of the sidewalk, about four feet wide and extending across the front of the building about twenty-two feet, is of what is known as "bull's-eye" construction; that is, a cast iron frame with small openings into which are fitted glass discs fastened with cement, and is so made to afford light from above to the areaway beneath the sidewalk, which is about nine feet deep, and extends to the curbline, and was constructed in 1899 by the owner of the building.

While walking on this, on August 18, 1910, it suddenly gave way, and plaintiff fell into the areaway and was severely injured.

The declaration consists of one original and seven additional counts. The original count alleges that de-

fendant wrongfully and negligently permitted, suffered and allowed said areaway to be and remain insufficiently and defectively covered, etc. The first additional count alleges that defendant for more than, to wit, five years, wrongfully and negligently permitted, suffered and allowed said areaway to be and remain insufficiently and defectively covered, etc. The second alleges that defendant on, to wit, March 1, 1899, suffered, allowed and permitted the reconstruction, repairing and building of a portion of an areaway or grating composed of glass, cement and metals, over said hole or opening, etc. The third alleges that defendant wrongfully and negligently and without reasonable diligence, suffered and permitted said covered areaway to be laid in said sidewalk for the purpose of permitting the occupants of the adjoining premises to have and receive light and air into said basement through said covered areaway, and suffered and permitted said covered areaway to be and remain old, weak, rotten, rusted and insecurely fastened, etc. The fourth alleges that defendant for to-wit twenty years suffered, allowed, consented and permitted said covering areaway or grating to be laid, put and maintained in said sidewalk, for the purpose of permitting the occupants of the adjoining premises to have light and air to and from said basement, etc. The fifth alleges that defendant suffered, consented, allowed and permitted it to be laid, constructed, repaired, built and maintained in said sidewalk, for the purpose of permitting light and air to enter in and from said basement, and that it was constructed of divers materials that were subject to decay and deterioration by the action of water and air, and that it thereby became wet, rusted and decayed, and was thereby rendered weak, rotten, insecure and insufficient, etc. The sixth alleges that defendant having knowledge of the unsafe condition of said sidewalk, or having had reasonable time and opportunity for receiving said knowl-

edge, etc., failed and neglected to put the same in proper repair and condition, for use, and unlawfully and negligently suffered it to be and remain in bad and unsafe repair and condition, unfit for travel, etc. The seventh alleges the duty of defendant to exercise reasonable care and diligence to inspect, examine, repair and maintain said sidewalk in a reasonably good and safe condition and repair, but that defendant wrongfully, unlawfully and negligently failed to inspect, examine, repair or maintain it in reasonably good and safe condition, etc.

Defendant pleaded not guilty, and there was a judgment on a verdict for plaintiff for $2,500 and costs. Defendant appeals and insists upon but one error here, the refusal of the trial court to allow its motion to exclude the evidence and instruct the jury to find it not guilty.

The evidence shows that in the basement of said building were several steam pipes from which steam frequently escaped, causing moisture to collect throughout the basement and subway under this sidewalk. That in the stone part of the sidewalk and adjoining the part of said walk which gave way with plaintiff, was a small opening covered with an iron grating, through which air, snow and water could pass into said subway, which would tend to rust and weaken the iron frame as well as the iron supports upon which the frame rested. The evidence shows that the upper surface of this walk appeared smooth, sound and in good condition, with no indication that it was not safe, strong, sound and in good condition; but on examination after the injury to plaintiff, some of the metal parts were found to be badly eaten with rust, and in one or more pieces, old cracks or partial breaks. There is no evidence in the record even tending to show that defendant ever attempted to make an inspection or examination of the under side of this structure.

Appellant insists that so long as the upper side of

said structure gave no indication that it was unsafe or out of repair, it owed plaintiff no duty to inspect or examine the under side. To this contention we cannot assent. A city owes to those in the exercise of due care for their own safety, the duty to exercise ordinary care to keep its streets in a reasonably safe condition for use; that is, such care as a reasonably prudent person would exercise under the same or similar circumstances. When the city permits adjacent property owners to excavate a portion of its streets, and to construct passageways under the same, it cannot escape liability by saying it owes no duty to the citizen who properly uses them. If the city permits such use of the street, which otherwise would be safe for travel, it must exercise such diligence as would be required of a reasonably prudent person under all the circumstances. If the one so using the street performs that duty for the city, it would be a defense; but if he fails to do it, then the city must. The city was under no obligation to permit its street to be so used (Burton v. Chicago, 236 Ill. 383), and when it did, it was its duty to exercise reasonable diligence to keep it in a reasonably safe condition; and the evidence shows that it made no effort in that respect, but it says that so long as the walk appeared safe from above, it owed no duty to examine underneath. That probably would be true if this walk had rested upon the ground, or other solid foundation, with no opportunity for such examination; but where, as here, there was a space of about nine feet, affording ample opportunity to make a thorough examination of the support, ordinary care would require that the city do something to ascertain the safety of such structures.

If the city is not bound to do anything until the surface indicates a dangerous condition, then it cannot be held in any case, as, if the pedestrian was in the exercise of due care for his own safety, he would see it then. But the law makes it the duty of the city to

exercise ordinary diligence to discover and repair defects, and one lawfully using the street has the right to assume that the city' has performed that duty, and that if a portion is not safe, that notice thereof will be given in some way.

Appellant insists that the evidence fails to show that such an examination would have revealed the defects. But if such an examination had been made, and no defects discovered, then the city would have performed its duty in that respect, which would have been a defense. As was said in City of La Salle v. Porterfield, 138 Ill. 114: "It is the duty of municipal officers to use ordinary care in keeping its bridges, culverts, etc., in a safe condition for public travel, and this involves the anticipation of defects that are the natural and ordinary result of use and climatic influences; and so wherever there is neglect on the part of the proper officer to make a sufficiently frequent examination of a particular structure, a municipality will not be relieved from liability, although the defect may not be open and notorious." See also Chicago v. Gillette, 108 Ill. App. 455; Hogan v. Chicago, 168 Ill. 551; Mattoon v. Worland, 97 Ill. App. 13.

In Sherwood v. District of Columbia, 3 Mackey 276, reported in 51 Am. Rep. 776, the court says:

"They ought to have known when they laid those wooden structures upon which the sidewalk was subsequently laid, they were laying something certain to decay. And although bound to know that this platform was liable to decay, the District made no examination of it for nine years. Here was a complete man trap, with the assurance to the public of security. We hold that the knowledge of these facts was all the notice that was required in this case. Where the city constructs a thing of this kind it becomes its duty to watch over it, to protect the public, or abide the consequences." And as was said in Chicago v. Loebel, 228 Ill. 52, "* * * it is wholly immaterial whether

it was placed there in the first instance by the city or by private individuals.''

This building was remodeled in the spring of 1899 and this walk was constructed at that time; but the evidence fails to show by what permit, if any, the street was excavated and said walk laid. But if the city authorities were in the exercise of due diligence at that time, they must have known of its construction, and it was their duty then to see that it was made safe, or by reasonably frequent examination thereafter, and it was in a reasonably safe condition for use, which was for the jury to determine.

If the city did not have actual knowledge of its construction, then it was for the jury to determine from all the facts and circumstances, whether or not it was due diligence on the part of the city in not having made any inspection or examination of this structure in eleven years.

These were questions of fact for the jury; and the trial court committed no error in refusing defendant's motion to exclude the evidence and instruct the jury to find it not guilty. The judgment of the trial court is therefore affirmed.

*Affirmed.*