Lewis Roberts, Plaintiff, v. City of Sterling and Ruth W. Geyer, Defendants.
Lewis Roberts, Plaintiff-Appellee, City of Sterling, Certain Defendant-Appellant, Ruth W. Geyer, Certain Defendant-Cross-Appellee.

Gen. No. 11,270.

Second District, Second Division.

September 2, 1959.

Released for publication October 3, 1959.

Ward and Ward, of Sterling (Robert W. Castendyck, and Philip H. Ward, Jr., of counsel) for defendant-appellant.

Bull, Ludens & Potter, of Morrison (Robert H. Potter, of counsel) for appellee and cross-appellant.

Riordon, Fletcher & Nelson, of Morrison (L. Willard Nelson, of counsel) for defendant and cross-appellee.

JUSTICE CROW delivered the opinion of the court.
The plaintiff, Lewis Roberts, brought suit against the defendants, City of Sterling and Ruth W. Geyer, for alleged personal injuries resulting from a fall through a public sidewalk in front of the premises of Ruth W. Geyer in the City of Sterling. A jury re-

turned a verdict for $5,000 against the defendant City, but found the defendant Ruth W. Geyer not guilty. Judgments were rendered on the verdicts. Post-trial motions of the defendant City and the plaintiff were overruled. The defendant City appeals, and the plaintiff files a cross appeal from the verdict and judgment finding the defendant Ruth W. Geyer not guilty, which cross-appeal, the plaintiff says, is prosecuted only in the event the Appellate Court reverses and remands the judgment for the plaintiff against the defendant City. Motions of the defendants for directed verdicts had been denied during the course of the trial.

The complaint consisted of two counts, the first alleging that on March 16, 1957 and for a long time prior thereto the defendants City of Sterling and Ruth W. Geyer, and each or either of them, had possession, charge, control, and maintenance of a sidewalk in the City of Sterling in front of a store building designated as 110 West Third Street, Sterling, owned by Ruth W. Geyer; the sidewalk extended over premises possessed, controlled, and maintained by Ruth W. Geyer, individually or jointly with the City of Sterling; it became the duty of the defendants and each or either of them to keep said sidewalk in a good, safe condition, and to have due regard for the safety of all persons lawfully thereon; the plaintiff was in the exercise of due care for his and others safety; the defendants and each of them negligently permitted said public sidewalk to become and remain in an unsafe condition and dangerous to the use of the plaintiff and other persons using the same; that condition had existed for such a length of time that the defendants and each or either of them had notice, or by the exercise of due diligence could and should have had notice thereof and could and should have repaired the sidewalk or warned the public and the plaintiff of the unsafe condition; on March 16, 1957, the plaintiff was standing upon the sidewalk in front of the prem-

341

ises of the defendant Ruth W. Geyer when, without warning, the sidewalk collapsed, causing the plaintiff to fall through the walk into an area beneath the same, which area beneath was controlled and maintained by the defendant Ruth W. Geyer, thereby proximately resulting in severe injuries and damages to the plaintiff.

The second count, against the defendant Ruth W. Geyer, only, alleged that there was a public sidewalk in front of her premises beneath which was an area controlled and maintained by Ruth W. Geyer; prior to the date of the plaintiff's injuries there was a hole in the walk covered by a grating, which the defendant Ruth W. Geyer attempted to repair or replace by a cement cover; that the repairs or replacement were negligently made by the defendant Geyer, or her agent; the plaintiff was in the exercise of due care; on March 16, 1957 the plaintiff was standing on the walk over the hole which had been so repaired or covered when the cover gave way causing the plaintiff to fall through into the area beneath, proximately resulting in severe injuries and damages.

The defendant City of Sterling in its answer admitted the allegations of Count I of the complaint to the effect that on March 16, 1957 and for a long time prior thereto the defendants, and each or either of them, had possession, charge, control, and maintenance of the sidewalk, and that the sidewalk extended over premises possessed, controlled, and maintained by Ruth W. Geyer individually or jointly with the City of Sterling, and denied, so far as material, the remaining allegations of Count I. The answer of the defendant Ruth W. Geyer denied all material allegations of the complaint.

At the trial the plaintiff offered evidence; no evidence was offered by the defendants.

342

The material evidence, in substance, was to the effect that the plaintiff, on March 16, 1957, was employed at the Sterling Foundry as a molder. In the morning of that day he was standing on the sidewalk with his hands in his pockets immediately in front of a display window of a building owned by Ruth W. Geyer at the address indicated. The building was evidently an older type commercial building, rented as an auto parts store, apparently in the, or a, business district or area of the City. The defendant Ruth W. Geyer had owned the property since 1924. The present tenant had been the tenant for 31 years. There is a photograph in the record of another area of the sidewalk in front of the building a short ways from where this incident happened, which was stipulated to show substantially the same conditions as existed at the place where this incident occurred. The area immediately below the sidewalk where the plaintiff was standing was an excavated area, some five feet deep, which was connected with the building and used by the occupants of the building for coal and other things. There had been a grating at the point in question, and this grating had at some time past been cemented over. It would appear from the photograph that the sidewalk, including the part where the former grating had been cemented over, was not new but had probably been in existence for many years. It was at this particular point that the concrete suddenly gave way and the plaintiff fell to the bottom, injuring his leg and back. He pulled himself up out of the hole. The hole was fourteen inches wide and thirty inches long, lengthwise to the sidewalk.

The defendant City of Sterling contends that before it can be found negligent there must be proof by the plaintiff of two elements—namely, that there was a defect in the sidewalk, and that the City had

actual notice or constructive notice of the defect; the doctrine of res ipsa loquitur does not apply to this case; the defendant City is not an insurer for injuries sustained on its sidewalks; the verdict is excessive in amount—there is no causal connection between the accident and the back injury; and the court erred in giving the plaintiff's instruction number 3. The defendant City of Sterling says in its brief that the plaintiff has proven an accident, an injury, and a lack of contributory negligence on his part, but he has presented no evidence of negligence on the part of the defendant City of Sterling which proximately caused the plaintiff's injuries, that, to prove negligence, he must show that the City of Sterling either had actual notice of a defect or upon the exercise of reasonable care could have discovered a defect, that there is no evidence that the City had any actual notice, that there is no evidence that the City of Sterling by reasonable diligence could have discovered a defect, if one existed, and that the plaintiff failed to prove that any negligence on the part of the City of Sterling was the proximate cause of the accident and injury.

On the other hand, the plaintiff contends that the doctrine of res ipsa loquitur applies to this case and was properly applied by the trial court when it overruled the City's motions for directed verdict; there was no error in plaintiff's given instruction number 3; the verdict and judgment are supported by the evidence; and they are not excessive.

The doctrine of res ipsa loquitur is that whenever a thing, act, instrument, or object which produced an injury is shown to have been under the sole control and management of the defendant charged and concerned, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will, as

to a party who is himself exercising ordinary care, be deemed to afford prima facie evidence to support a recovery in the absence of any explanation by the defendant tending to show that that injury was not due to his want of care; the presumption or inference of negligence raised by the application of the doctrine is not absolute or conclusive but is rebuttable: Bollenbach v. Bloomenthal (1930), 341 Ill. 539. This is a very ancient and salutary principle of law; it has been the established law of Illinois for many years; in cases of such incidents, where the principle applies, the duty of explanation is thrown upon those having charge of the thing, act, instrument, or object involved, particularly when information concerning the thing, act, instrument, or object itself is within the particular or peculiar knowledge of the defendant; and it has been applied in many cases, in varying types of situations, as against various defendants—a few illustrative cases being: Arado v. Epstein (1944), 323 Ill. App. 194; Krueger v. Richardson (1945), 326 Ill. App. 205; Edmonds v. Heil (1948), 333 Ill. App. 497; McCleod v. Nel-Co Corp. (1953), 350 Ill. App. 216.

 It is necessary for the application of the doctrine that the defendant's control of the immediate cause of the injury be exclusive, and it cannot be invoked without some evidence or other showing tending to prove that the injury complained of was caused by someone under defendant's control, nor where there is divided responsibility: Blade v. Site of Fort Dearborn Bldg. Corp. (1927), 245 Ill. App. 484; Bollenbach v. Bloomenthal (1930), 341 Ill. 539. However, as a matter of law, the entire and complete control of the surface of this public street, including the adjoining public sidewalk, as a part thereof, and everything underneath it was vested in the defendant City of Sterling: Bolger v. Chicago (1916), 198 Ill. App. 123; in the absence of any proof specifically as to who owns

345

the fee it is a presumption of law that the fee of a public street, including the adjoining public sidewalk, as a part thereof, is in the defendant City, although, so far as the determination of the question here involved is concerned, it is immaterial whether the fee was in the City or the abutting lot owner—if in the City the abutting lot owner had no right to excavate under the sidewalk without the consent of the City and then only upon such terms as the City should impose—if in the abutting lot owner he could make no use thereof inconsistent with the public use—and in either event if an excavation of the kind here indicated was to be made beneath the public sidewalk it was the duty of the City to specify the kind of structure to be erected to support the surface of the sidewalk and to require its specifications to be carried out: Sherwin v. City of Aurora (1913), 257 Ill. 458. Further, the defendant City of Sterling here in its answer admitted the allegations of paragraph 1 of Count I of the complaint that, so far as material, ". . . on to-wit March 16, 1957, and for a long time prior thereto the defendants, City of Sterling, a municipal corporation, and Ruth W. Geyer, and each of them or either of them, were possessed, had charge and control of and maintained a certain sidewalk . . . that said sidewalk extended over the premises possessed, controlled and maintained by defendant Ruth W. Geyer, either individually or jointly with defendant, City of Sterling." The defendant City thereby expressly admitted, among other things, that it was possessed, had charge and control of and maintained this sidewalk. Under a former practice act it has been held to be firmly established that in a case of this character a defendant desiring to deny allegations of this type and make an issue thereon must plead specially that it was not the owner or in possession, operation, charge, control, or maintenance

346

of the property or instrumentality which has caused an injury, and that a general plea of not guilty did not put such in issue: Chicago Union Traction Co. v. Jerka (1907), 227 Ill. 95; Bolger v. Chicago (1916), 198 Ill. App. 123; cf. Blade v. Site of Fort Dearborn Bldg. Corp. (1927), 245 Ill. App. 484. And under the present Civil Practice Act, Ch. 110, Ill. Rev. Stats., 1957, par. 43, ". . . the facts constituting any affirmative defense, . . . and any ground or defense, whether affirmative or not, which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the answer . . . ." The defendant City having not pleaded specially—i. e., having not plainly set forth in its answer—that it was not the owner or in possession, operation, charge, control, or maintenance of this sidewalk, having not denied the allegations of paragraph 1 of Count I of the complaint but expressly admitted, inter alia, that it was possessed, had charge and control of and maintained the sidewalk, and the entire and complete control of this public sidewalk and everything underneath it being, in any event, vested, as a matter of law, in the defendant City, including, presumptively, the fee ownership thereof, the defendant City's control and management of the immediate cause of the injury here concerned—the sidewalk—was sole and exclusive.

An action will lie against a municipal corporation for damages growing out of a neglect to perform a legal duty; it is the duty of a city to use reasonable care to keep its sidewalks in a reasonably safe condition for the use of such of the travelling public as themselves exercise ordinary care; a neglect to perform that duty, resulting in damage to a person exercising due care, will render the City liable for damage sustained; the City has an affirmative duty of observation, inspection, and inquiry to ascertain

whether its such structures are in fact safe for public travel; this involves the anticipation of defects that are the natural and ordinary result of use and climatic influences; so wherever there is neglect on the part of the City to make a sufficiently frequent examination of a particular structure the City will not be relieved from liability although the defect may not be open and notorious: Sherwin v. City of Aurora (1913), 257 Ill. 458; City of LaSalle v. Porterfield (1891), 138 Ill. 114.

In Bolger v. Chicago (1916), 198 Ill. App. 123, in which certiorari was denied by the Supreme Court, as the plaintiff stepped on a manhole cover while crossing a public street an explosion underneath the manhole occurred, the cover was blown in the air, the plaintiff fell in the opening with his hands on the edge of the opening, and the cover came down on his hands, severly injuring him. The explosion was caused by ignition of gases in the chamber underneath the street which extended from manhole to manhole. The defendant City offered no evidence. It had pleaded only the general issue. There was a judgment for the plaintiff, and that was affirmed. The Court held the doctrine of res ipsa loquitur was applicable, and said, pp. 125, 126–128:

"It is a very ancient and salutary principle of law, that where one has charge or management of a thing in connection with which an accident happens, which in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of proper care; that in case of such an accident the duty of explanation is thrown upon those having charge of the thing, particularly when information concerning the thing itself is within the particular or peculiar knowledge of the defendant. . . ."

". . . We know, as a matter of law, that the entire and complete control of the surface of the street and everything underneath it is vested in the City of Chicago. On the face of this record it is admitted that the manhole, the manhole cover, the conduit and the electric wires placed therein and the sewer mains were the property and under the management and control of the defendant. It further appears that explosive gases usually do collect in such conduits and had collected in the conduit in question at and for some time prior to the time of the accident, and that their ignition was its cause. Knowledge concerning the wires, conduits, sewers, gas mains, etc., beneath the surface of the street is, as between the city and any inhabitant, peculiarly within the knowledge of the former. As streets are, of necessity, constantly used by all of its inhabitants, and as the safety of the public is a matter which the law considers of paramount importance, the duty of the city to use ordinary care to see that the safety of the public is not endangered as the result of its arrangement and management of the instrumentalities beneath the street is, of course, indisputable. . . . Upon a careful consideration of the question, therefore, we are firmly of the opinion that the principle which throws upon the owners of a boiler or an engine the burden, not necessarily of explaining the origin of an explosion, but of showing facts and circumstances which would rebut the inference of negligence, applies with even greater force to the case of explosions in conduits beneath the public streets. It follows from this that as the evidence disclosed by this record made out a prima facie case against the city, and the city expressly declined to offer any explanatory proof whatever, the plaintiff was entitled to judgment. . . ."

In Sherwin v. City of Aurora (1913), 257 Ill. 458, affirming 168 Ill. App. 320, Second District, while the

plaintiff was walking upon a public sidewalk in the business district of the defendant City a portion of the sidewalk upon which he stepped gave way, causing him to fall in the opening or areaway or basement below, about 9 feet, from which he suffered injuries. The incident occurred in front of a privately owned store building occupied by a tenant. The earth beneath the portion of the sidewalk adjoining the building had been excavated to a depth of about 9 feet, and the sidewalk over that part consisted of glass bull's eyes set in cement in iron frames supported by iron beams resting on stone pillars and foundations beneath the walk, the purpose being to furnish light to the basement of the building. The opening under the sidewalk—the areaway—was actually an extension of the basement of the building into the street. It had been so constructed some 11 years before by the owner of the building. The defendant City had never made any inspection from below to ascertain the condition of the areaway or its supports. One of the supporting beams had broken, which could have been discovered by an inspection from below, but which could not have been discovered from the upper surface of the sidewalk. So far as surface indications were concerned the sidewalk areaway was apparently in a safe condition. The defendant's plea was not guilty. The plaintiff recovered a judgment against the defendant City. This Appellate Court affirmed, 168 Ill. App. 320, and the Supreme Court affirmed. The Supreme Court said, pp. 462, 464:

"The only question presented and argued before us is, whether, under such circumstances as are presented in this case, the city is under any obligation to inspect that part of the supporting structure underneath the sidewalk, and whether it is bound to take notice of any defect that is not apparent at or from the surface of the sidewalk. Appellant cites and relies upon a num-

350

ber of cases which hold that there is no duty of substructure inspection of sidewalks imposed upon a city. With but one exception these cases all refer to sidewalks which are laid upon the ground, so that what was said in those cases can have no application to this case and is of no binding force here. . . . . . .

"In the case at bar the proof tended to show that under favorable climatic conditions the construction was of such a character as might be reasonably expected to last for fifty years. Yet the city was bound to take notice of the method of construction and the surrounding conditions and to anticipate the natural and ordinary result of climatic influences, and it was incumbent upon it to make sufficiently frequent examinations to ascertain whether the structure was becoming so deteriorated, through climatic or other natural influences, as to endanger the safety of the public. The space underneath this areaway was not used for any purpose except to afford light to the basement of the store building and to provide space for the steam pipes to pass through from the street to connect with the heating apparatus of the building. The owner was bound to afford access to the proper officer for the purpose of making an inspection, and there was no obstruction to prevent an examination from below. The jury were fully warranted in believing, from the evidence, that the defective condition had existed for a long time and that the most casual examination would have disclosed the dangerous condition of the structure. . . ."

In the same case in this Appellate Court we said, 168 Ill. App. 320, at pp. 323–325, 326:

"Appellant insists that so long as the upper side of said structure gave no indication that it was unsafe or out of repair, it owed plaintiff no duty to inspect or examine the under side. To this contention we

351

cannot assent. A city owes to those in the exercise of due care for their own safety, the duty to exercise ordinary care to keep its streets in a reasonably safe condition for use; that is, such care as a reasonably prudent person would exercise under the same or similar circumstances. When the city permits adjacent property owners to excavate a portion of its streets, and to construct passageways under the same, it cannot escape liability by saying it owes no duty to the citizen who properly uses them. If the city permits such use of the street, which otherwise would be safe for travel, it must exercise such diligence as would be required of a reasonably prudent person under all the circumstances. If the one so using the street performs that duty for the city, it would be a defense; but if he fails to do it, then the city must. The city was under no obligation to permit its street to be so used (Burton v. Chicago, 236 Ill. 383), and when it did, it was its duty to exercise reasonable diligence to keep it in a reasonably safe condition; and the evidence shows that it made no effort in that respect, but it says that so long as the walk appeared safe from above, it owed no duty to examine underneath. . . .

"If the city is not bound to do anything until the surface indicates a dangerous condition, then it cannot be held in any case, as, if the pedestrian was in the exercise of due care for his own safety, he would see it then. But the law makes it the duty of the city to exercise ordinary diligence to discover and repair defects, and one lawfully using the street has the right to assume that the city has performed that duty, and that if a portion is not safe, that notice thereof will be given in some way. . . .

"If the city did not have actual knowledge of its construction, then it was for the jury to determine

from all the facts and circumstances, whether or not it was due diligence on the part of the city in not having made any inspection or examination of this structure in eleven years.

"These were questions of fact for the jury; and the trial court committed no error in refusing defendant's motion to exclude the evidence and instruct the jury to find it not guilty. . . ."

■■■ So far as the question of notice to the defendant City of a defective sidewalk is concerned, the law is, of course, well settled that the City will not be held liable unless it has actual notice of the defective walk, or unless it has constructive notice of such facts and circumstances as would, by the exercise of reasonable diligence, lead a prudent person to such knowledge: Chicago v. Stearns (1883), 105 Ill. 554. As we have heretofore pointed out, the defendant City in its answer admitted the allegations of paragraph 1 of Count I of the complaint that, so far as material, ". . . on to-wit March 16, 1957, and *for a long time prior thereto* the defendants, City of Sterling, a municipal corporation, and Ruth W. Geyer, and each of them or either of them, were possessed, had charge and control of and maintained a certain sidewalk . . . ." The evidence, including the photograph, indicates the area to be in the, or a, business district of the City, the building on the abutting property was an older type commercial building, rented for business purposes, it had been owned by the defendant Geyer since 1924—33 years before this incident—the present tenant had been there for 31 years, the sidewalk, including the cemented over part where this incident occurred, was evidently not new but had probably been in existence for many years, and the cemented over part was located not in some obscure, isolated, or infrequently travelled region but directly in front of one of the display windows of the store in a presum-

353

ably regularly used area and reasonably visible and noticeable at least to those charged with any responsibility for its condition. In view of the pleadings, the evidence, the reasonable inferences therefrom, and the law as to the defendant City's sole and exclusive control and management of this sidewalk, there was sufficient in the record from which the jury could reasonably find, on the question of fact as to notice, that the defendant City either had actual notice of the defective walk, or, if not, it had constructive notice of such facts and circumstances as would, by the exercise of reasonable diligence, lead a prudent person to such knowledge. Under the circumstances it was immaterial, for the purposes of this case, whether the particular part of the walk concerned had been placed there in the first instance by the defendant City or by private individuals: Chicago v. Loebel (1907), 228 Ill. 52.

 We have considered the cases the defendant City cites on the merits, namely, Boender v. City of Harvey (1911), 251 Ill. 228, Ryan v. Chicago (1898), 79 Ill. App. 28, Arnett v. City of Roodhouse (1947), 330 Ill. App. 524, Kirchner v. Kuhlman (1948), 334 Ill. App. 339, and Storen v. Chicago (1940), 373 Ill. 530. The facts in none of them are similar to the facts of the present case. In only one—Kirchner v. Kuhlman—was the matter of the application or non-application of the doctrine of res ipsa loquitur involved, but there the jury had found for the defendant, and res ipsa loquitur was held inapplicable to the facts—damages to the plaintiff's business property by a fire while some of their employees were present as well as some of the defendant painter's employees who were painting the place—because there was a divided responsibility between the plaintiff and the defendant and the defendant's employees did not have exclusive control of the place where the fire occurred.

354

There can be no quarrel with the general principles referred to in some of them as to the responsibilities and liabilities of a municipal corporation, that, for example, a municipality is not an insurer against accidents, a City is not bound to keep its streets absolutely safe, and a municipal corporation cannot be held liable for every accident that occurs within its limits, but they do not militate against our views here. The defendant City suggests that something other than the alleged negligence of the City could have caused the collapse of the sidewalk, such as a change in the supports minutes before by the abutting owner, his agent, or tenant, or a child forcefully jumping on the area or a car driving on the sidewalk the night before or some other unknown act of the abutting owner or tenant could have caused a rapid deterioration or loosening not reasonably detectable by the City. On this record such would be only speculative. The presumption or inference of negligence raised by the application of the doctrine of res ipsa loquitur was not absolute or conclusive, but was rebuttable by any competent, relevant, material evidence the defendant City could produce explaining the occurrence tending to show that the plaintiff's injury was not due to its want of care. But it produced no such evidence.

The thing which produced the plaintiff's injuries here, the particular part of this sidewalk, was, under the circumstances, as between the plaintiff and the defendant City, under the sole control and management of the defendant City; the occurrence—the sudden falling or collapse of that part of the sidewalk—is such as in the ordinary course of events does not happen if due care has been exercised; the plaintiff himself admittedly was exercising ordinary care; the jury could reasonably find that the defendant City either had actual notice of the condition, or constructive notice of such facts and circumstances as would,

by the exercise of reasonable diligence, lead a prudent person to such knowledge; information concerning the thing was within the particular or peculiar knowledge of the defendant City as between it and the plaintiff; the fact of injury itself will, therefore, be deemed to afford prima facie evidence to support a recovery in the absence of any explanation by the defendant City tending to show that the injury was not due to its want of care—and there was here no such explanation offered; if there was neglect on the part of the defendant City to make a sufficiently frequent examination of this particular sidewalk, including the supporting structure underneath, it is not relieved from liability even though the defect may not have been open and notorious or apparent from the surface of the sidewalk.

The plaintiff's given instruction number 3, which the defendant City urges was error, is as follows:

"You are instructed that it was the duty of the defendant, City of Sterling, to use reasonable diligence to keep the sidewalk in question in a reasonably safe condition, and if you believe from the evidence that the defendant failed to perform such duty, and that by reason of its negligence in that regard the sidewalk was permitted to remain in a dangerous condition by reason whereof the plaintiff, Lewis Roberts, while exercising due care on his part, received the injuries complained of, then the defendant, City of Sterling, is liable."

The defendant City at the conference on instructions objected to that on the grounds there was no evidence of negligence on the part of the City or that it failed to perform a duty, and in its brief says there is no evidence of what the City did or did not do or what it could have done, that there is no evidence the sidewalk was in a dangerous condition, or that there

was a defect, or that there was actual or constructive notice to the City. A substantially similar instruction, so far as material, was given and held not to be error in Chicago v. Stearns (1883), 105 Ill. 554. The instruction is not in conflict with the rule as to notice to the defendant City—it uses the language "sidewalk was *permitted* to remain in a dangerous condition", which denotes a decided assent—and if the City assented it necessarily did so from a knowledge of the condition of the walk—assent implies knowledge. Under the condition of the pleadings and evidence, if there was a question as to notice, there was sufficient from which the jury could reasonably find notice, either actual or constructive. What we have heretofore said is enough to indicate our belief that in other respects there was, under the circumstances here, a sufficient foundation in the evidence, pleadings, and law, for the giving of the instruction and it does not assume facts not of record. The defendant City refers us to no case holding the giving of such an instruction to be reversible error. Duffy v. Cortesi (1954), 2 Ill.2d 511 and Woods v. Chicago, B. & Q. Ry. Co. (1923), 306 Ill. 217, referred to by the defendant City, involved entirely different instructions, though the cases reiterate well accepted general principles as to instructions which we have applied. Under all the circumstances, there was no error in giving the plaintiff's given instruction number 3.

The last contention of the defendant City is that the verdict and judgment for $5000 is excessive. As to the extent of plaintiff's injuries, the evidence shows that the plaintiff in falling through the hole in the sidewalk skinned and bruised his left leg, went to the hospital, but was not there confined apparently, and his leg was x-rayed and treated. It was not fractured evidently, but bruised and skinned from the knee to the ankle.

357

The plaintiff claimed that on the same day his back commenced to hurt. Although the plaintiff did not specifically testify that he had had no previous trouble with his back prior to the date of the accident, we believe that from all the evidence such is a reasonable inference. He was treated by a physician for a week for his leg injury, his back was later x-rayed, there was no bone structure injury to the vertebrae or back, and the physician prescribed a hot water bottle for the back. He did not go to work during the week following the injury, missing six work days, complaining of his back and leg. He saw the doctor two more times during the week and each time had his leg dressed and was given a hypodermic shot in the hip. In the second week he worked five working days, and commenced a series of treatments with a Dr. Swain, an osteopathic physician, which extended from April 1st to June 25, 1957, for what the doctor diagnosed, from objective and subjective examination, as a posterior sacroiliac strain. Then he missed three more work days. All the time since the injury he has worn a sacroiliac belt at work. Dr. Swain in his examination of the plaintiff found a swollen, tender area in the left side of the lower back and an inability to bend the lower back on the left side while the plaintiff was standing up. He received diathermic treatments, strapping with tape, faradic stimulation, and injections of a proliferating type, which type of treatment is painful, the doctor said. On June 25, 1957 the pain was out of the back, and motion was normal, but there was some weakness in the area. Over a year from the date of the accident, July 22, 1958, he again complained of injury to the same place and he received further treatments from Dr. Swain for the same area of his back, and he still complains of pain in the lower left side of his back at the point of his injury. At the time of the injury his wages were $1.70 an hour and at the time

358

of trial they were $1.85 or $1.50 per hour depending on plant workload, averaging $1.79 per hour.

 There is, we believe, sufficient evidence of a causal connection between the accident and the back injury, and between the back injury presently complained of and the original accident to make those matters properly questions of fact for the jury to decide. In this character of case the damages are ordinarily for the determination of the jury, and unless we are able to say the verdict is so excessive as to indicate the jury was moved by prejudice or passion, we are not warranted in reversing or requiring a remittitur for affirmance on the ground the verdict is excessive: Fugett v. Murray (1941), 311 Ill. App. 323. In McCleod v. Nel-Co Corp. (1953), 350 Ill. App. 216, where the plaintiff was not permanently disabled, there were no fractures, he had been struck by plaster resulting in two skin abrasions, the cuts had been dressed, no stitches were required, and a week or so later he was getting along satisfactorily, we felt a verdict and judgment for $7500 was excessive and, alternatively to a reversal, we required a remittitur of $2500, and affirmed the judgment for $5000 as so reduced by the remittitur. We are not here able to say the verdict for $5000 is so excessive as to indicate the jury was moved by passion or prejudice. Knight v. Seney (1919), 290 Ill. 11, the only case the defendant City cites on this, merely states some of the general rules as to remittiturs, and has nothing to do with alleged excessive damages or requested remittiturs in a situation such as is presented in the case at bar. The judgment against the defendant City will, therefore, be affirmed.

The plaintiff, as cross-appellant, seeks relief on his cross-appeal only if this Court reverses and remands the judgment against the defendant City. Inasmuch as we are affirming that judgment, there is no occasion to consider and we are not considering the merits of the

cross-appeal, and the judgment in favor of the defendant Ruth W. Geyer will, therefore, be affirmed.

Affirmed.

WRIGHT, P. J., concurs.