(No. 5054

PEARL L. WARE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 11, 1965.*

GUNN, DAVIDSON AND BRANTMAN, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; EDWARD A. WARMAN AND SAMUEL I. NEIBERG, Assistant Attorneys General, for Respondent.

PEZMAN, J.

Claimant seeks to recover the sum of $25,000.00 from the State of Illinois for injuries received while visiting the office of the Department of Labor, Division of Unemployment Compensation, at 106 South Ashland Avenue, Chicago, Illinois. Pearl Ware seeks to recover such damages from respondent under the doctrine of Res Ipsa Loquitur.

Respondent alleges that claimant waited approximately one month before seeking medical attention at Cook County Hospital, and further contends that the injuries were not of the nature alleged by claimant in her cause.

On December 21, 1961, claimant, Pearl Ware, visited the office of the Division of Unemployment Compensation of the Department of Labor of the State of Illinois at 106 South Ashland Avenue, Chicago, Illinois, for the purpose of applying for unemployment compensation. Claimant was directed to sit down and wait her turn, and upon being so directed she went to the east side of the building, sat down on a wooden folding chair there provided, and, after sitting on it for a minute, the chair collapsed under her. Claimant was thrown to the floor with her left arm under her to catch her fall, and, in so doing, she jammed her left elbow and shoulder. Pearl Ware reported the injury to the personnel at the Division office, who told her to go home, and wait until someone came to see her.

Claimant testified that she began feeling severe pain in her left arm and shoulder immediately after the fall, and even stated at the hearing in October of 1963 that she still suffered some pain. Claimant's testimony indicates that she waited for a visit or a call from the Division of Unemploy-

ment Compensation of the Department of Labor, and upon receiving none finally went to the Cook County Hospital on January 22, 1962, where she was x-rayed. Her arm was placed in a sling, and she was instructed to return in about a month. The x-ray, which was taken at the Cook County Hospital within approximately one month after the accident, was admitted into evidence. It was examined by Dr. Leonard Smith who stated that the x-ray showed a comminuted fracture of the acromion with a slight displacement of the fragments. Claimant returned to Cook County Hospital for treatment in February and March of 1962, and on March 8, 1962 was discharged. On April 30, 1962, Pearl Ware went to see Dr. Leonard Smith, an orthopedic surgeon, who x-rayed her, and told her that she would need another treatment. For this treatment he sent her to the Chicago Physical Therapy Center. Claimant was given forty-one separate treatments under the direction and supervision of Dr. Virginia L. Winkler, a licensed physician and therapist, during the period from May 11, 1962 to and including October 18, 1962. Dr. Leonard Smith saw and treated claimant on numerous occasions between April 30, 1962 and August 19, 1963.

Dr. Smith testified at the hearing that "there appeared to be a separation of the acromioclavicular joint on claimant's left side with a considerable degree of proliferic changes, which may have been a fracture of the acromion process." He also testified that in his opinion surgery would be necessary to relieve the pain, that as a result claimant would be further disabled for a period of four to six weeks, and that the total charges in connection with such surgery would be approximately $750.00.

From the transcript it appears that claimant was not gainfully employed after her injury for approximately six months. Prior to that time she had been doing domestic

work in and around Chicago, for which she was paid $20.00 a week, plus her meals and carfare.

Pearl Ware never received a bill from the Cook County Hospital. Her bill with Dr. Leonard Smith is $390.00, and remains unpaid. Also unpaid is a statement from Dr. Virginia Winkler for $624.00. From claimant's own testimony, unrefuted, she has had a loss of wages amounting to $480.00.

Respondent made no allegation of contributory negligence on the part of claimant, and the issue was not presented. Respondent merely contends that the doctrine of Res Ipsa Loquitur is not applicable to a public authority. No witnesses were presented, but respondent did introduce into evidence photostatic copies of certain departmental records having to do with claimant's visits to the office, both before and after her accident. Respondent states in its brief that by stipulation of the parties claimant was examined by one Dr. John F. Gleason in 1963. There is no evidence of any such stipulation in the record by testimony or agreement, and respondent's exhibit No. 2 does not show on the record as having been admitted or agreed to, nor is there any record of the same having been requested by the Court or on motion of either party. A letter constituting a medical report of the said Dr. John F. Gleason is included in the transcript as respondent's exhibit No. 2 without any further comment. Rule 16A of the Court of Claims Rules provides,

"In any case in which the physical condition of a claimant or claimants is in controversy, the Court may order him, or them, to submit to a physical examination by a physician. The order may be made by the Court on its own motion or on motion for good cause shown, and upon notice to the claimant to be examined, or his attorney, and to all other claimants, or their attorneys, if any, and shall specify the time, place, manner, conditions and scope of the examination, and the person or persons by whom it is to be made."

There is nothing in the Court file or the transcript of testimony to indicate that this rule was relied upon or used.

Regardless, the examination by Dr. John F. Gleason, made on December 23, 1963, could not be given the same weight, as that made by an attending physician within thirty days after the injury.

This Court is of the opinion that the doctrine of Res Ipsa Loquitur is applicable to a public authority in Illinois. (See *Roberts* vs. *City of Sterling*, 22 Ill. App. 2d 337; *Kenney* vs. *State of Illinois*, 22 C.C.R. 247; and *Finch* vs. *State of Illinois*, 22 C.C.R. 376.) The testimony clearly shows that the chair in question was under the control and management of the Unemployment Compensation Division of the Department of Labor of the State of Illinois, and that the occurrence was such as in the ordinary course of events would not have happened if due care had been exercised by respondent. Claimant has established a prima facie case of negligence on the part of respondent, thereby shifting the burden of proof to respondent. Respondent produced no evidence on the question of negligence, and has failed to rebut the presumption raised by claimant's testimony. There is testimony in the record by claimant that after the fall she noticed there was an old place in the chair where the chair had cracked, and that there was a crack on the back part of the chair where the seat goes into the leg. Under the doctrine of Res Ipsa Loquitur it becomes the obligation of respondent to show by affirmative proof that respondent was not guilty of negligence in the incident in question, namely, the collapsing of the chair on which claimant sat. Respondent has failed to do so, and the Court finds that respondent was guilty of negligence in the maintenance of the chair, and that said negligence caused the injury to claimant. Claimant's "out of pocket" expenses are clearly established at $1,494.00, and, in addition, she seeks to recover for miscellaneous expenses, pain and suffering, future medical expenses, and compensation for permanent injury. This Court

does not find it necessary to deal with each of these individually.

Claimant is awarded the sum of $2,000.00.